## JAMES W. WILLIAMS *vs.* HENRY BEARD AND OTHERS.

One who purchases real estate, for valuable consideration without notice, from the mortgagor thereof, acquires a valid title, under the Act of 1843, against a prior mortgagee, whose mortgage is unrecorded at the time of the purchase, and who fails to record it within sixty days, the time allowed by the Act for that purpose; and it makes no difference that the mortgage is recorded after the purchase and before the conveyance from the mortgagor to the purchaser is recorded, or that the latter has not been recorded.

The Act of 1843 introduced a direct and important change in the law relative to the recording of mortgages, and is not to be construed as in *pari materia* with the previous Acts upon the subject of recording.

To a bill for foreclosure, a purchaser from the mortgagor, who is in possession under his conveyance, may avail himself of the defence of purchase for valuable consideration without notice, notwithstanding the proviso to the Act of 1791, which, in effect, vests the legal title in the mortgagee where the mortgagor is out of possession.

In equity a mortgage is treated as a mere security for the payment of the debt, and the equity of redemption as the real and beneficial estate, tantamount to the fee at law.

The purchaser from the mortgagor gave his own promissory note for part of the purchase money, and, after it became due, satisfied it, by transferring to the mortgagor the note of a third person, guaranteed by the purchaser: *Held*, That the circumstance that the note thus transferred was still unpaid, and that the purchaser was liable therefor as guarantor, did not invalidate the defence of purchase for valuable consideration without notice, which the purchaser, in all other respects, had successfully made.

A party seeking the reversal, on appeal, of a decree in equity upon a question of fact, must satisfy the Appellate Court that the overbearing weight of the evidence is against the decree.

To a bill for foreclosure against the mortgagor and various persons to whom he had conveyed different parcels of the land, the alienees of one of those persons are necessary parties. So, also, the heirs of a decedent, to whom, in his lifetime, the mortgagor had bargained another parcel, and to whose widow he had conveyed it, were held to be necessary parties.

### BEFORE CARROLL, CH., AT ABBEVILLE, JUNE, 1868.

This was a bill by James W. Williams, plaintiff, against Henry Beard, James M. Richardson, Patrick Heffernan, Joel Pinson, John W. Calhoun, Eliza A. Powers, Frances Sheppard and Elizabeth

Day, defendants, to foreclose a mortgage of real estate given by the defendant, Beard, to the plaintiff.

In January, 1859, the plaintiff sold to Beard, at public auction, a tract of land, lying in Abbeville District, containing two thousand and fifty acres, more or less. at the price of $25,000, and, to secure the payment of the purchase money, took his bond, with four sureties, conditioned for the payment of that sum, in four equal annual installments, with interest, and a mortgage of the tract of land. The bond and mortgage were dated January 26, 1859. On that day, Beard conveyed to the defendant, Pinson, at the price of ———— ————, one hundred and twenty-four and three-fourths acres of the mortgaged land. On the 17th March, 1859, he conveyed to the defendant, Richardson, at the price of $20,898.50, fourteen hundred and ninety-two and three-fourths acres of the same land. On the 8th April, 1859, he conveyed to the defendant, Calhoun, at the price of $860, forty-three acres of the same land. On the 19th August, 1862, he sold and conveyed to Patrick Heffernan fifty-seven acres of the mortgaged land, and on the 26th January, 1864, he sold and conveyed forty-seven and three-fourths acres of the mortgaged land to Frances Sheppard.

The evidence also tended to show that other small parcels of the land had been sold off by Beard, leaving him the owner of about one hundred and two acres; that the defendant, Elizabeth Day, had purchased a parcel of it from Calhoun; that Beard contracted with J. W. Powers, deceased, to sell to him part of the land; that Powers took possession, under his agreement, and paid part of the purchase money; and that, after his death, Beard conveyed the part he had agreed to sell to Powers to his widow, the defendant, Eliza A. Powers; and that Patrick Heffernan had conveyed the parcel he had purchased to two of his children.

The plaintiff's mortgage was recorded in the Register of Mesne Conveyance office, for Abbeville District, on the 27th June, 1866, and Beard's deed of conveyance to Richardson was recorded in the same office, on the 20th November, 1866. The other deeds of conveyance had not been recorded

The defence set up by the purchasers, respectively, was, that they were subsequent purchasers for valuable consideration without notice, and that, as the plaintiff's mortgage 'had not been recorded within sixty days, they were entitled to the protection given to such purchasers by the provision of the first Section of the Act of 1843, (11 Stat., 256.)

The facts relative to the questions, whether the purchase moneys had been paid, and whether the purchasers had notice, are stated in the Circuit decree, and in the judgment of this Court.

The Circuit decree is as follows:

CARROLL, Ch. Upon general principles of pleading, the bill may be defended against the objection of multifariousness. It seeks to enforce a lien derived from a single instrument against lands, which, at its date, constituted but one estate in severalty. It is a common charge upon their several parcels of the mortgaged premises, which the bill sets up against the defendants, and they have all a common interest opposed to it —Story's Eq. Pl., §§ 533, 284 and 285. But the frame of the bill is vindicated by authority directly applicable to the case in hand.—Story's Eq. Pl., § 197 ; *Miller* vs. *Kershaw*, Bail. Eq., 481.

Some of the questions discussed at the hearing are not regarded as necessary to be here considered. Neither the plaintiff's mortgage, nor the defendant's (Richardson's) conveyance from Beard, were recorded until after the lapse of more than seven years from their respective dates.

But the mortgage was recorded some months earlier than the deed to Richardson. The deeds from Beard to the other defendants have never been recorded. Each and all of the defendants (exclusive of Beard) contend that they are " subsequent purchasers for valuable consideration without notice," as contemplated by the Act of 1843, and are entitled to its protection. It is replied, on the part of the plaintiffs, that the Acts of 1698 and 1785 have been construed so as to stand together, and that a like interpretation, as far as practicable, should be placed upon the Act of 1843, so that a consistent system of registration may result; that the only repugnance between the Act of 1843 and the two preceding Acts relates to the time within which mortgages are to be recorded; that the provision, in the Act of 1698, that the mortgage or conveyance first recorded shall have priority, is not repealed by the Act of 1843, and that the effect, therefore, of the Act last mentioned is to render an unrecorded mortgage void only as against subsequent purchasers and mortgagees, whose deeds shall have been first recorded. Such does not seem to have been the construction placed upon the Act of 1843, in the recent case of *McKnight* vs. *Gordon*, 13 Rich. Eq., 222.

It is true that the subject of controversy in that case was perso-

nal . property—a negro slave. But the provision, in the Act of 1698, giving precedence to the bill of sale, or mortgage of negroes first recorded, is, in substance, but a repetition of the provision which it makes as to conveyances and mortgages of land. So, also, in the case referred to, the judgment of the Court has reference only to the legal consequences, under the Act of 1843, which result from the failure to record, in due time, a mortgage of personal property. Yet such consequences are precisely the same as follow the omission to record, within the prescribed time, a mortgage of real estate, and are expressed by that Act in identically the same terms. In determining, therefore, who, under the Act of 1843, are to be deemed subsequent purchasers for valuable consideration without notice, as against a prior mortgage of slaves, the Court has, also, adjudged who shall be considered such purchasers, as against a prior mortgage of lands.

The plaintiff, McKnight, in the case cited, had never· recorded his mortgage. Eighteen months after its date, one of the slaves mortgaged was sold under execution against the mortgagor, and was purchased by the defendant, Gordon, to whom the Sheriff, on the same day, executed a bill of sale. For his defence, Gordon claimed to be a purchaser for a valuable consideration without notice, under the Act of 1843. "The positive rule of law established by this statute," says the Court, "precludes the mortgagee, who had omitted to put his mortgage on record within the time limited, from interposing the estate which he acquired by it, in bar or derogation of the estate or claim for which one, who is within the terms of its protection, has paid. As against such an one, he is, by his own omission to record, estopped from asserting his title." "The answer of the defendant," continues the Court, "denies notice of the mortgage, or of any claim whatever by the plaintiff, to the property therein mentioned, and affirms that he paid the purchase money in good faith, without notice of the plaintiff's claim. No witness contradicts this denial of notice;" and the judgment of the Court is thus announced: "It is considered, upon the case made by the pleadings, that defendant is a purchaser for valuable consideration, without notice of the prior unrecorded mortgage. He fulfills, therefore, in all particulars, the terms of the statute."

The bill of sale which Gordon received from the Sheriff seems never to have been recorded. Yet this circumstance is not even alluded to in the opinion of the Court. Nor is the faintest intimation to be there found that the recording of Gordon's bill of sale,

prior to the recording of the mortgage, was deemed an essential prerequisite to his being admitted to the protection which the statute of 1843 affords to subsequent purchasers for valuable consideration without notice.

On the contrary, in the absence of any registration whatever of his bill of sale for the slave, he was, nevertheless, held to have "fulfilled, in all particulars, the terms of the statute."

It is difficult to conceive what practical good could be accomplished by recording a conveyance, so far as prior incumbrances are concerned. The plain purpose of the Act of 1843 was to guard against loss and injury to subsequent creditors or purchasers, from their dealing with the mortgagor, under the delusion that he retained the absolute and unincumbered ownership of the property mortgaged.

Moreover, it is said that the object of recording is to give notice; but, if the party has actual notice, the purpose is as effectually answered as it can be by notice implied by recording.—*Martin* vs. *Sale*, Bail. Eq., 4. The several purchasers of the mortgaged lands seem to have passed immediately into possession of the parcels sold to them, respectively, by Beard. Where a party is in actual possession of land, the very fact of his possession is deemed sufficient notice to persons claiming as subsequent purchasers or creditors; and surely notice more positive or explicit cannot be required in favor of a prior incumbrancer.—*Massey* vs. *McIlwain*, 2 Hill Ch., 421. But it is unnecessary to refer to the evidence of implied notice to the plaintiff. There is positive and direct proof of actual notice, for "Beard testifies that the plaintiff, Williams, knew of the sales of the land that witness made to the defendants, purchasers from him." It results that the defendants, claiming as subsequent purchasers, for valuable consideration without notice, under the Act of 1843, are not precluded from that defence because of their having omitted to record their respective conveyances prior to the recording of the plaintiff's mortgage.

The defendants, Pinson, Calhoun and Mrs. Sheppard, have paid the entire purchase money of the parcels of land sold to them, respectively, by Beard, and the fact of their doing so is not understood to be disputed. For the land purchased by Richardson he made payment, in part, to Beard, by placing at his disposal, at a stipulated price, certain other lands, which, by Beard's direction, were afterwards sold and conveyed to other purchasers—Beard receiving the proceeds. The residue of the purchase money was se-

cured by Richardson executing and delivering to Beard his promissory notes for the same. These notes, amounting, in the aggregate of their principal sums, to some $11,000, or more, were subsequently paid, partly in money, and, in part, by transferring to Beard notes against other persons. One of the notes so transferred is the "note of ———— Abney, for about $1,400, the payment of which Richardson guaranteed ;" and that note yet remains unpaid, in the possession of Beard. It is objected that, as, by such guaranty, a liability still rests upon Richardson for the amount secured by Abney's note, his debt to Beard for the purchase money of the land must be regarded, to that extent, at least, as still unpaid. Both Beard and Richardson concur in stating explicitly that the notes of Abney and others transferred, and the money paid to Beard, were accepted by him, in full satisfaction of Richardson's notes for the purchase money. Those notes were, therefore, surrendered to Richardson. The parties to that transaction did not design a security merely for Richardson's debt to Beard, but its satisfaction and discharge. Richardson's liability, under his guaranty, is, in no just sense, a continuation of his original liability under his contract with Beard. That has been extinguished ; another debtor has taken his place ; and the secondary and contingent liability he had incurred is not for the payment of his original debt to Beard, but for the payment of another debt, arising under another and distinct contract, to which, originally, Beard was an entire stranger. Richardson's debt to Beard, for the purchase money of the land, is considered, therefore, to be fully satisfied and paid.

It is urged by the plaintiff that, upon the case as presented, the defendants, purchasers from Beard, should be held to have had notice of the mortgage before their respective contracts with him had been fully completed by execution of the conveyance and payment of the purchase money. There was no written or printed advertisement of the terms of the sale when Beard became the purchaser of the land. It was sold by the plaintiff at auction, to the highest bidder, and in the presence of some twenty-five or thirty persons. Immediately before the land was exposed to sale, it was announced by the auctioneer, as among the conditions of the sale, that the purchase money should be secured by bond, with adequate personal securities, and a mortgage of the premises. Both bond and mortgage were executed a few days afterwards, and, as it is to be inferred, at the house of the defendant, Beard. There was a

report or rumor in the neighborhood that such a mortgage was in existence.

Several witnesses testified that they had heard of it, and some of them frequently, while others deposed that it had never reached them until after the defendants, who had purchased from Beard, had received the deeds and had paid for their respective parcels of the land. The proof of notice, as against the defendants, J. M. Richardson and Mrs. Sheppard, had this extent, no more.

In respect of the defendant, Calhoun, the evidence is the same, with the addition that he was present at Williams' sale of the land to Beard. Calhoun's presence at the sale appears only from his admission of the fact in his answer, and it is there coupled with the averment that he heard nothing of a mortgage of the land upon that occasion. Against the defendant, Pinson, the evidence of notice is much stronger. He, likewise, was present at the sale, though he deposes that he did not arrive upon the ground until near the close of the biddings. When the bond and mortgage to Williams was executed by Beard, at the house of the latter, Pinson was again present, and again failed, as he deposes, to hear any mention of the mortgage whatever.

The friend to whom he applied to become his surety for the purchase money of the land sold to him by Beard, having asked him if there was not a mortgage upon the premises, Pinson made the same inquiry of Beard, and received for answer that, if he would pay the purchase money, he would get a good title.

As against the defendants, J. M. Richardson and Mrs. Sheppard, the proof of notice is clearly insufficient. Mere reports in circulation, proceeding from strangers or persons not interested in the property, will not be deemed sufficient evidence. "Constructive notice," it is said, "cannot be implied from rumor, however general."—*Dopson* vs. *Harley*, 6 Rich. Eq., (note,) 177; 2 Sug. on Vend., 1040. The additional evidence against the defendant, Calhoun, consists in the mere fact that he was present at the sale of the land to Beard; without more, though the auctioneer may have read aloud the terms of sale from a written paper in his hand, yet, to the by-stander, this amounted to no more than a mere verbal announcement. It is by no means improbable that some of the persons present—especially some of those who did not mean to bid—failed to note and apprehend all the terms of sale thus declared. Their failure to do so might well have been occasioned by a momentary interruption, or diversion of their attention from the auctioneer

while announcing the conditions of the sale. A witness, intelligent, respectable, and entirely disinterested, deposes that, though present at the sale, he heard nothing of the mortgage until after the commencement of this suit. The evidence adduced is not regarded as sufficient to affect the defendant, Calhoun, with notice of the mortgage.

With regard to the defendant, Pinson, there are certainly strong grounds for suspecting that he was aware of the existence of the mortgage, before completing the purchase of the land by payment of the purchase money. But is such knowledge, on his part, established satisfactorily by the proof?

At the outset, it must be borne in mind that the burden of proof is upon the plaintiff. Beard testifies that, in none of his sales, did he mention the existence of the mortgage—that he thought his bond ample security for the purchase money, and wished to make as good sales as possible. This may serve to explain how it was that Pinson, though at the house of. Beard when the mortgage was executed, was kept in ignorance of its existence. The several purchasers from Beard could not have relied upon the sufficiency of the sureties upon his bond to Williams as a protection against the mortgage, for, as between the sureties and the mortgage, the latter undoubtedly was the primary security for the debt. Yet those purchasers seem to have paid to Beard a fair and full price for the lands he sold to them. "It seems to me," says Chancellor Harper, "that the consideration paid is a most material fact in determining the question of notice. If the compensation were very inadequate, I think it would raise a fair presumption of notice. If the consideration be a full one, it goes as far to repel it. Indeed, it is not credible that a man should pay a full consideration for a title which he knew to be doubtful or incumbered."—*Thayer* vs. *Davidson*, Bail. Eq., 424. It is said that Beard's evasive reply, when asked if there was not a mortgage upon the land, was enough to put Pinson upon further inquiry, and was, therefore, equivalent to notice. In his testimony, Pinson states that, at that time, he had never heard of a mortgage upon the land; "did not know such a paper was out; never heard of it till after the summer in 1865; Boazman did not say there was a mortgage, but asked witness if there was one." Under such circumstances, Pinson might, perhaps, in good faith, have understood Beard as saying, in effect, that there was no mortgage, since a "good title" could not be made unless the land was conveyed free from all lien and incumbrance. Or Pinson,

perhaps, might have understood Beard's reply as merely repelling the inquiry; because it implied a want of proper confidence in himself. It may, at least, be doubted whether Pinson's omission to make further inquiry, under the circumstances, amounted to gross negligence on his part; and a less degree of incautiousness appears to be insufficient to affect a purchaser with notice. In *Jones* vs. *Smith*, 1 Phill., 257, Lord Lyndhurst remarks: "I do not consider this a case of gross negligence, and I am of opinion that the party, having acted *bona fide*, and having only omitted that caution which a prudent, wary and cautious person might, and probably would, have adopted, is not to be fixed with notice of this instrument." Such seems to be the rule in ordinary cases, where notice is alleged to rebut an equity. But the Court distinguishes between notice for such purpose, and notice to supply the defect of registration. "It is not necessary," says Chancellor Harper, "to refer to the numerous authorities cited in argument, which fully establish what was contended for: that, to supply the want of registration, the notice must be full, explicit, and clearly proved."— *City Council* vs. *Page*, Speer Eq., 212. The evidence of notice to Pinson does not seem to come up to this standard, and it is considered, with hesitancy, however, that he, also, must be regarded as being, within the contemplation of the Act of 1843, a purchaser, for a valuable consideration, without notice of the plaintiff's mortgage.

As the defence set up by the defendant, J. M. Richardson, is sustained, it operates, of course, for the protection of such of his co-defendants as were purchasers from him.

Since Beard's conveyances to the defendant, Patrick Heffernan, of certain parcels of the mortgaged premises, the latter has executed deeds conveying the same to his children, Elizabeth Day and James L. Heffernan, respectively, neither of whom is a party in this cause. The portion of the mortgaged land now in the occupancy of the defendant, Eliza A. Powers, her husband, John A. Powers, purchased, in his lifetime, from Beard, and, having paid a portion of the purchase money, entered into possession, receiving, however, no deed of conveyance. After the death of J. A. Powers, Beard testifies that "he renewed the contract of sale with the defendant, Eliza A. Powers, his widow," and received from her a further portion of the purchase money. All persons having an interest in the equity of redemption should be made parties to a bill for foreclosure. "If the mortgagor has assigned the equity in the different estates mortgaged to several persons, they must all be brought

before the Court as parties, if foreclosure is sought of all the estates." "If the mortgagor has conveyed the mortgaged property in trust, the trustees, as well as the beneficiaries, are necessary parties to such a suit."—Story's Eq. Pl., § 197. One who has entered into a valid contract for the purchase of land is treated in this Court as the equitable owner of the land. He may devise it, as land, before the conveyance is made, and it passes, by descent, to his heirs as land.—1 Story's Eq., § 790; *Landrum* vs. *Hatcher*, 11 Rich. Eq., 57, 58.

Obviously, the contract of Mrs. Powers with Beard must be considered as being for the common benefit of herself and her children, as statutory heirs of her deceased husband, and her possession of the land must be deemed to be theirs also, as her co-tenants. As to the parcels of the mortgaged premises which Beard conveyed to Patrick Heffernan, and sold to John A. Powers in his lifetime, the suit cannot be entertained, for want of necessary parties; and the children of John A. Powers, and the alienees of Patrick Heffernan, are regarded as such parties. The balance of the mortgage debt still due and unpaid remains yet to be ascertained, and a report from the Commissioner upon that subject will be necessary.

It is ordered and decreed, that, as to the defendants, James M. Richardson, Elizabeth Day, John W. Calhoun, Frances Sheppard and Joel W. Pinson, the bill be dismissed; and that the costs of these defendants be paid by the plaintiff, and be repaid to him by the defendant, Henry Beard.

It is further ordered, that the plaintiff have leave to amend his bill by making additional parties thereto, as he may be advised.

And it is further ordered, that the Commissioner do inquire and report what sum remains due and unpaid upon the mortgage debt herein above referred to.

The complainant appealed, and now moved this Court to reverse the decree, in every particular in which its ruling is against the complainant, on the grounds:

1. Because the mortgagor, having sold the larger part of the land mortgaged, and parted with possession thereof, the Act of 1791, which changes the rule of the common law, vesting the fee in the mortgagee, does not apply; and as to all the lands in the possession of the defendants, other than Henry Beard, on forfeiture of the mortgage, by non-payment of the money secured by it, the legal title and the right of possession were united in the complainant,

against which title the pleas of the respective defendants, James M. Richardson, Elizabeth Day, John W. Calhoun, Frances Sheppard, and Joel W. Pinson, of "subsequent purchasers for valuable consideration without notice," cannot prevail.

2. Because the plea of purchaser for valuable consideration without notice, was not sustained by proof of payment of the purchase money, and should have been overruled.

3. Because, the proof being clear and uncontradicted that James M. Richardson had transferred to Henry Beard, in part payment of the purchase money, a note on ———— Abney, for about $1,400, which was guaranteed by Richardson, and that it is still in the hands of Beard and unpaid, His Honor erred in sustaining his plea.

4. Because His Honor erred in ruling that a subsequent conveyance of land, recorded out of time, was good and effectual against a previous mortgage of the same land, also recorded out of time, but recorded before the subsequent conveyance.

5. Because His Honor erred in ruling that a subsequent conveyance, not recorded, was good against a previous mortgage, recorded out of time.

6. Because the Acts of the General Assembly regulating the registry of papers, to wit: the Acts of 1698, 1785 and 1843, are parts, making, together, a system of registration, and should be construed together; the provisions of each, wherein they are not repealed, should stand, and have full force and effect; and that the provisions of the Act of 1698, "that that sale, conveyance, or mortgage of lands and tenements, except original grants, which shall be first recorded," shall be the first, is still of force, and His Honor erred in ruling the contrary.

7. Because His Honor erred in ruling, in opposition to the great weight of the testimony, that the defendants did not have actual notice of the complainant's mortgage before the payment of the purchase money. This ground of appeal applies to all of the *terre* tenants of Beard, and especially to Joel W. Pinson.

8. Because the defendant, Eliza A. Powers, being included in the bill as defendant, merely as a *terre* tenant of Henry Beard, without seeking to charge the estate of her late husband, or for relief against the same, she, in her possession, should be regarded as the representative of her children who live with her; and His Honor the presiding Judge erred in ruling that her children are necessary parties to the proceeding.

Williams *vs.* Beard.

9. Because the decree, in other respects, is contrary to law and the equity of the case.

*Perrin, Cothran, Jones,* for appellants.

*Thomson, Fair,* contra.

March 23, 1870.   The opinion of the Court was delivered by

MOSES, C. J.   The plaintiff, James W. Williams, on the 26th day of January, 1859, sold and conveyed a certain tract of land, situated in Abbeville County, consisting of 2,250 acres, more or less, to Henry Beard, one of the defendants, taking from him, for the purchase money, his bond, with sureties, payable in four equal annual installments, and a mortgage of the premises, which mortgage was not recorded until 27th June, 1866.

On March 7, 1859, the said Beard sold and conveyed to James M. Richardson 1,492¾ acres of the said land.   He entered, and has since held possession by himself and son, (except as to some small parcels, which he sold,) paying part of the purchase money in other lands, (transferred, by directions of the said Beard, to third persons, he (Beard) realizing the consideration therefor in securities accepted by the said Beard,) and in his own note for the balance, which was settled in full before January, 1864.   The deed was not recorded until the 20th day of November, 1866.

To John W. Calhoun, the said Beard, on the 6th day of April, 1859, sold and conveyed 43 acres of the said land, for $860, which was paid in March, 1863.   The deed was not recorded.

To Joel M. Pinson, the said Beard, in 1859, sold and conveyed 124¾ acres of the said tract, and received full payment.   The deed conveying the same was not recorded.

Elizabeth Day and Frances Sheppard, (whose answers detail facts similar to those set forth by the said Richardson, Calhoun and Pinson,) with the last named defendants, claim that they are subsequent purchasers for valuable consideration without notice, and deny the right of the plaintiff to subject their land, by foreclosure of the mortgage or otherwise, to the payment of the bond of the said Beard, given for the real estate so to him sold and conveyed.

Assuming, for the present, that the defendants bought without notice of the mortgage to Williams, the question is presented, whether a mortgage not recorded within sixty days, but recorded before subsequent conveyances from the mortgagor of the same

land were recorded, has priority over such conveyances, or can prevail against them, even if not recorded.

It would be a matter more of interest and curiosity than of practical utility, to consider, here, the numerous decisions under our registry laws. An examination of them might render it difficult to reconcile the apparent conflict which some of them present, with previous opinions on questions in which there appears to be no dissimilarity. The Courts of this State have certainly held, in regard to instruments executed before the Act of 1843, (which will be hereinafter referred to,) that the registry laws of force in the State are the result of the joint operation of the Act of 1698, (2 Stat., 137,) and the 45th Section of the County Court Act of 1785, (7 Stat., 232,) and have, accordingly, given effect to the conveyance first recorded, without regard to the time, as against creditors and subsequent purchasers for valuable consideration without notice.— *Steel* vs. *Mansell*, 6 Rich., 437.

If we did not consider ourselves bound by the current of authorities which have established this rule—in itself one involving rather a matter of practice and direction than of principle—we might feel at liberty, having in view the Act of 1789, (5 Stat., 127,) which gives legislative construction to the Act of 1785, to hold that it was not to be construed in connection with that of 1698, as if the two were to be understood as one enactment, but that it was intended as a substitute for it, and, by necessary implication, repealed it. So far, therefore, as the cases have established a system where the rule applies, it is not our purpose to weaken or impair its effect.

The question, however, with which we have to deal is, in our judgment, affected by neither of the said Acts, unless we can be persuaded, by the argument, to hold that the Act of 1843, (11 Stat., 256,) was intended by the Legislature to compel no change, and must be construed with reference to the former Acts, only adding another to the structure, which was in no way to destroy the symmetry of the whole.

That Statute, by its first Section, enacts "that no mortgage, or other instrument of writing in the nature of a mortgage, of real estate shall be valid, so as to affect the rights of subsequent creditors or purchasers for valuable consideration without notice, unless the same shall be recorded in the office of the Register of Mesne Conveyance for the District wherein such real estate lies within sixty days from the execution thereof."

The second applies to like instruments of personal property, re-

21

quiring, in one particular, a registry, also, in the office of Secretary of State; and the third repeals "all Acts, and parts of Acts, in relation to mortgages, repugnant to this Act."

· It is contended that, notwithstanding this peremptory language, by which validity is denied to any mortgage, unless recorded within the time prescribed, so far as concerns the rights of subsequent creditors or purchasers for valuable consideration without notice, effect is to be given to the mortgage of the plaintiff, because, under the Act of 1698, "the sale, conveyance, or mortgage first recorded, shall be taken, adjudged, allowed and held good, firm, substantial and lawful in all cases," &c.

Was the Act of 1843 only to operate on that of 1785, by restricting the time within which such instruments were to be recorded, and reducing the limit from six months to sixty days? This we must hold, to give countenance to the position assumed by the plaintiff. If such only had been the intent of the Legislature, its end could more readily have been reached by a·plain and express enactment to that effect. The language of the Act is of a different character, and has a wider aim. It declares that no mortgage shall be valid, as against subsequent creditors or purchasers for valuable consideration without notice, unless recorded within sixty days, and repeals all Acts repugnant to it. Does the Act of 1698, on which the plaintiff relies for his support, in its main feature, exhibit no repugnance to that of 1843? The Act of 1698 makes "lawful" the mortgage first recorded; that of 1843 withholds from force or validity any mortgage not recorded within sixty days, as against the rights of creditors or subsequent purchasers for valuable consideration without notice. So far from sustaining the mortgage first recorded, it declares that no mortgage shall be valid, as to, &c., unless recorded within the time prescribed by it. If the said Act was not intended, in view of the previous decisions of the Court, to introduce a direct and important change in the registry system, it would be in vain for the Legislature to express its will beyond the reach of doubt or controversy.

In *Youngblood* vs. *Keadle*, 1 Strob., 130, *Wardlaw*, J., says: "Our Act of 1843, concerning the recording of mortgages, has so altered the law that many cases are not likely to occur to which the decision now made will be exactly applicable."

In the very case of *Steel* vs. *Mansell*, the same Justice says, at page 447: "Even the Act of 1843 leaves for future discussion difficult questions, concerning mortgages, which preceded the date

assigned for its going into operation, and those that may have been recorded after the prescribed time, but before opposing rights occurred."

It is, at least, not a forced conclusion to say, that this eminent jurist saw that a most effectual alteration had been made in the system, by the Act of 1843, but which could have no application to the subject he was considering, because the instrument then before the Court was executed previous to its passage.

The Act of 1843, as we have seen, uses, in reference to mortgages of personal property, the same language (with an immaterial exception) which it employs in relation to those of real estate. The case of *McKnight* vs. *Gordon*, 13 Rich. Eq., 222, is only distinguishable from the one before us, by the fact that there the mortgage under which the party claimed had never been recorded. The opinion of the Court very clearly intimates the application which it would make of the Act of 1843, if the instrument, though recorded, was not recorded within the limited time. In the course of the full opinion pronounced by the learned Justice Inglis, at page 232, he expresses his judgment on the very point we are considering, when he says: "But the positive rule of law, established by this statute, precludes the mortgagee, who has omitted to put his mortgage on record within the time limited, from interposing the estate which he acquired by it, in bar or derogation of the estate or claim for which one who is within the terms of its protection has paid."

Our judgment concurs with that of the Chancellor below, in refusing to give the effect claimed to the plaintiff's mortgage.

It is submitted, however, by the first ground of appeal, "that the mortgagor, having sold the larger part of the land mortgaged, and parted with the possession thereof, the Act of 1791, (5 Stat., 178,) which changes the rule of the common law, vesting the fee in the mortgagee, does not apply, and, as to all the lands in the possession of the defendants, other than Beard, on forfeiture of the mortgage, by non-payment of the money secured by it, the legal title, and the right of possession, were in the said plaintiff, Williams; against which title the pleas of the respective defendants, Richardson, Day, Calhoun, Sheppard and Pinson, of subsequent purchasers for valuable consideration without notice, cannot avail."

At common law the mortgagee was held seized of the legal estate. In equity, however, he is considered as having a transfer of the property itself, as a security for the debt, and, according to the

intention of the parties, a qualified estate and security.—Story, J., in *Conard* vs. *Atlantic Insurance Company*, 1 Pet., 441.

In modern times, the doctrine of the Court of Equity, recognizing the mortgagor (until foreclosure) as the actual owner of the land, has, to a certain extent, in reference to the possession by the mortgagor, been acted upon by the Courts of common law.—1 Coote, 325.

Chancellor Kent, in the 4th volume of his Commentaries, at page 159, says: "The equity doctrine is, that the mortgage is a mere security for the debt, and only a chattel interest; and that, until a decree for foreclosure, the mortgagor continues the real owner of the fee." See, also, 2 Story's Eq., §§ 1015, 1016.

It is contended, however, that, although the Act of 1791 changes the relation which, at common law, exists between the mortgagor and mortgagee, yet that, by reason of the proviso in the second Section, it has no application where "the mortgagor is out of possession;" and, in that contingency, the common law relation prevails.

The construction which our Courts have given to this proviso does change the position of the mortgagor and mortgagee, as to the legal estate, where the former is out of possession.

Where, by reason of the mortgagor being "out of possession," the legal estate is vested in the mortgagee, he can occupy no other or higher position than the mortgagee at common law. All the rights and equities which attach to the one the other is entitled to, and no more; unless some covenant in the instrument restrains him until condition broken, he may enforce his legal rights by a possessory action, or claim the reception of the rents and profits. When, however, he comes into a Court of Equity, for a foreclosure, he does not proceed under his legal title for a recovery of the land, but to enforce the security for his debt; and the relief which he thus seeks he can obtain only by an order for the sale of the property, that the equity of redemption may be barred, and all the rights which attach to both the parties will vest in the purchaser under such sale. "In such a Court the equity of redemption is considered to be the real and beneficial estate, tantamount to the fee at law."— 4 Kent, 159. And it is this that equity acts upon in a bill for foreclosure.

In what character does this plaintiff come into Court, except as mortgagee, asking that Beard, and the other defendants claiming through him, may be barred of all equity of redemption by a sale,

and that the proceeds shall be applied to the debt, as a security for which the mortgage was taken and held?

The third ground charges error in the Court below, in holding that, under the testimony, Richardson had paid Beard all the purchase money for the land he conveyed to him; and, especially, because it appears that one of the notes transferred to him by Beard was guaranteed by Richardson.

This circumstance, if the debt for the land was paid, (and the Chancellor so held,) can in no way revive the liability of Richardson for the consideration given for it. There is no obligation resting on him, under his contract, for the purchase—he has fully satisfied it. His guarantee of Abney's note is an independent undertaking; it did not enter into the original elements of the purchase; it was not one of the modes of payment promised. His debt for the land has been met; and, if the plaintiff, Williams, supposes he has the right to follow the note, so guaranteed, in the hands of Beard, and compel its appropriation to his debt, he must pursue his remedy, as he may be advised, under some other form. He makes no such claim under his bill.

The question of payment of valuable consideration, without notice, on a review of the testimony by the Chancellor, has been resolved against the plaintiff.

We have lately had occasion to review the course of the Courts of the last resort in this State in regard to the effect of the judgment of a Chancellor on mere questions of fact; and, following the rule which we find by the cases generally applied, we require the party seeking the reversal of the conviction to which he has thereon arrived, to show that the overbearing weight of the testimony leads to a conclusion different from that which, on consideration of it, he has adopted.

A full and close examination of the facts submitted in this cause has not impressed us with the presence of such preponderating proof, on the other side, as would justify us in interfering with the judgment of the Chancellor in this regard.

The plaintiff surely can complain of nothing but his own laches. For near seven years he neglected to record his mortgage, and this notwithstanding he was well informed as to the various sales made by his grantee—one on the very day, and the principal one within two months of the execution of his own deed. He had knowledge of the possession by the various purchasers from Beard, of the improvements they were making on the premises, and the moneys

arising from the re-sales were paid to him on the bond he held on the contract with Beard. Is it straining conjecture too far to say that, with all this information, he felt safe in his debt, trusting rather to the solvency of the sureties than to his mortgage? The general change in the condition of the people of the State, to which, probably, the sureties to the bond have not been exempt, has prompted him, too late, to place his mortgage in a position which might have made it available, if earlier sought. The consequences of his own default must not be allowed to fall on the heads of innocent purchasers.

We also concur with the Chancellor in the view which he takes as to the parcels of the mortgaged premises conveyed by Beard to Patrick Heffernan, and sold to John A. Powers, in his lifetime.

The decree is affirmed, and the motion dismissed.

*Willard,* A. J., concurred.