**In re Gary ONDREY, Debtor.**

**Bankruptcy No. 97–16356 K.**

United States Bankruptcy Court,
W.D. New York.

Nov. 3, 1998.

Gregg Everdyke, Hodgson, Russ, Andrews, Woods & Goodyear, LLP, Buffalo, NY, for Debtor.

Ann E. Evanko, James D. Gauthier, Hurwitz & Fine, P.C., Buffalo, Special Counsel for the Trustee.

### DECISION AND ORDER

MICHAEL J. KAPLAN, Chief Judge.

This Motion appears to present an issue of first impression: whether a debtor's interest in a foreign retirement savings plan (valued at over $80,000) and a foreign pension plan (valued at over $100,000) are exempt under New York Debtor and Creditor Law § 282(iii)(2)(d) [1] or 11 U.S.C. § 541(c)(2), respectively.[2] After due deliberation, the

---

1. For the sake of clarity, any references to New York Debtor and Creditor Law will be as "N.Y. D & C," and any references to the Internal Revenue Code, as codified at 28 U.S.C. § 101 et seq., as amended, will be as "I.R.C." All other references to statutory sections refer to the Bankruptcy Code, as codified at 11 U.S.C. § 101 et seq., as amended.

2. This is now the third decision that this Court has rendered as to the exemptions that are

Debtor's claim of exemption as to the pension plan is granted, and as to the retirement savings plan is hereby denied.

## FACTS

The facts in this case are largely uncontested. Gary Ondrey (hereinafter the "Debtor") is a United States citizen who has been a New York resident since 1993. The Debtor has been continuously employed by Air Canada since 1974. When he was employed by Air Canada, the Debtor enrolled in two retirement programs provided by his employer: the Air Canada Pension Plan (the "Pension Plan") and the Pilots Retirement Equity Plan (the "Equity Plan").

The Pension Plan was established by Air Canada prior to the Debtor's employment, and participation in the Plan by Air Canada employees appears to be mandatory. The Pension Plan is funded through a trust which consists of mandatory contributions by both employer and employee. The Debtor made mandatory contributions as required by the terms of his employment, but claims that he made no voluntary contributions to the Pension Plan. The Pension Plan contributions are currently being held in trust by R–M Trust Company pursuant to an agreement between R–M and Air Canada. The terms of the Pension Plan include an antialienation provision. [Exhibit A of Affidavit in Support of Motion to Reconsider Order.]

The Equity Plan, also established by Air Canada prior to the Debtor's employment, was funded through a trust which consisted (the past tense is important) of contributions from the employer and voluntary contributions by employees. Pursuant to the terms of the Equity Fund Agreement between Air Canada and its employees, Air Canada contributed an amount equal to 5% of the employee's earnings to the Equity Fund on the employee's behalf. Air Canada contributed such amounts to the Equity Fund on this Debtor's behalf between February, 1974 and December, 1984, when Air Canada terminated the Equity Plan. The Debtor apparently never made any personal contributions to the Equity Plan.

It is unclear how the funds in the Equity Plan were held after notice of the termination of the Equity Plan until 1996. In July, 1996, the Debtor established a Registered Retirement Savings Fund administered by the O'Donnell Group of Funds (the RRSP), and transferred his interest in the funds that had once been in the Equity Plan, to the new account. Since transferring the funds to the RRSP, the Debtor has not made any contribution to the RRSP. The Debtor asserts (and there is no indication to the contrary) that he has not withdrawn any money from this account. The Debtor further asserts that his interest in the RRSP "may be" subject to certain prohibitions against alienation and assignment enforceable under Canada's Benefit Standards Act. It appears to the Court from the Debtor's testimony at deposition that he could have done whatever he wished with the funds in July of 1996, but tax penalties, foreign exchange rates, and other financial considerations might have placed substantial premiums on some decisions rather than others.

## DISCUSSION

When New York "opted out" of the federal exemption statute (see 11 U.S.C.

claimed. This matter comes before this Court at this time upon Debtor's motion for reconsideration of this Court's Order dated March 9, 1998, which denied him any exemption in these accounts. The original Order was granted only after the Debtor originally appeared unprepared before this Court. Debtor admitted in court that he had received notice that his attorney had ceased his representation two weeks prior to the hearing, but the Debtor appeared in court without yet attempting to obtain new representation by an attorney, without filing any papers in response to the motion, and was not prepared to argue the merits of this issue. [Transcript of March 4, 1998 hearing, pp. 2–7.] At the hearing, the Debtor was told that he would have the opportunity to have this motion reconsidered, and was advised to obtain counsel in the interim. See *id.* at 10–12.

Since then, this Court issued a second opinion which addressed the narrow issue of whether Rule 5205(c)(1) of New York Civil Practice Law and Rules, dealing with trusts set up by someone other than the debtor, was dispositive. This Court concluded that CPLR 5205(c)(1) was not dispositive but noted that "nothing found in [that April 28, 1998 decision] preclude[d] an independent analysis of the § 541(c)(2) question." See *id.* n. 1. And that is one of the matters that this Court decides today.

§ 522(b)(1)), it enacted N.Y. Debt. and Cred. Law § 281 *et seq.* In particular, N.Y. D & C § 282 specifies and limits the exemptions which a debtor may claim under the Bankruptcy Code, and it incorporates also another provision of New York Law—Rule 5205 of the N.Y. Civil Practice Law and Rules. See *Dubroff v. First National Bank of Glens Falls (In re Dubroff)*, 119 F.3d 75, 76 (2d Cir.1997). A debtor may claim the exemptions contained within N.Y. D & C § 282 and the burden rests on any objecting party to prove that the exemption was incorrectly claimed. See Rule 4003 F.B.R.P.

### A. The Pension Plan

■ The objection to the Debtor's claim of exemption as to the Pension Plan is overruled. The Court is satisfied that the Plan is a "pension plan" exempted by N.Y. D & C § 282(2)(e). The fact that the Debtor made mandatory contributions is irrelevant here where the Plan was established by Air Canada. See, *e.g., In re Enfield*, 133 B.R. 515, 522 (Bankr.W.D.Mo.1991) (holding that Debtor's mandatory contributions to retirement systems were exempt under federal law).

### B. The Registered Retirement Savings Plan

(i). *The argument under N.Y. D & C § 282(2)(e) is rejected.*

The Debtor has claimed that his interest in the RRSP is exempt under N.Y. D & C § 282 because it is analogous to an IRA.[3] The Debtor argues that the RRSP is as "similar" to a pension fund or retirement plan as IRAs were found to be in *Dubroff.*[4] See 119 F.3d 75.

In *Dubroff,* the Chapter 7 debtor claimed that his interest in an IRA was exempt under N.Y. D & C § 282(2)(e). See *id.* at 76. A creditor and the trustee objected to the debtor's claimed exemption. The court found it "plain" that N.Y. D & C § 282(2)(e) generally exempts retirement plans which will make payments on account of age so long as they do not fall within the restrictions contained within subsections (i),(ii), and (iii) of that section.[5] See *id.* at 77. After carefully analyzing the language of N.Y. D & C § 282(2)(e), the court allowed the debtor's claimed exemption. See *id.* at 80.

The rationale of *Dubroff* is this: an IRA is "similar" to a pension plan because, and only because, IRAs are governed by § 408 of the I.R.C. Section 408 of the I.R.C. was specifically mentioned in one of the restrictions to allow a debtor to exempt an account which fits within the requirements of § 408. The statute made sense according to the court, only if one began with the premise that an IRA is "similar" to a pension for purposes of the statute. Otherwise, there was no need to refer to the IRAs governing statute (26 U.S.C. § 408), in the restrictions.

But the retirement plan which the Debtor here has claimed as exempt is (1) not an IRA, and (2) not expressly addressed in either New York exemption law or in the Internal Revenue Code. Thus, the *Dubroff* reasoning does not apply.[6]

The RRSP is, however, addressed in a treaty. The "Convention Between the United States of America and Canada with Respect to Taxes on Income and Capital" (hereinafter the "Can–U.S. Treaty"), at Article

---

3. Actually, the Debtor claims that the "Equity Fund" from which the funds in the RRSP were derived, is exempt. Though clever advocacy, it is sleight of hand and is rejected later herein.

4. *Dubroff* was decided after CPLR 5205 was amended (in 1995) to specifically and clearly exempt IRAs, but the case interpreted the pre-amendment statute. Since 1995, IRAs are exempt as to a New York domiciliary, regardless of whether the case is pending in the Second Circuit or elsewhere, and regardless of whether the issue arises within or without a bankruptcy case.

5. The restrictions are rife with double, and perhaps triple negatives. It is reasonably safe to say

that the restrictions render non-exempt those accounts that a debtor herself establishes, except where such accounts have been "qualified" as pension devices by the I.R.C. IRAs are so qualified.

6. Furthermore, it is in a foreign country. That alone could undermine any policy basis for an exemption, at least in the minds of regulators, because (for example) § 408(i) of the I.R.C. contemplates that the trustee of an I.R.A. be subject to the regulatory jurisdiction of the Secretary of the Treasury.

XVIII, subsection seven, as amended, provides:

> A natural person who is a citizen or resident of a Contracting State and a beneficiary of a trust, company, organization or other arrangement that is a resident of the other Contracting State, generally exempt from income taxation in that other State and operated exclusively to provide pension retirement or employee benefits may elect to defer taxation in the first-mentioned State, under rules established by the competent authority of that State with respect to any income approved in the Plan but not distributed by the Plan, until such time as and to the extent that a distribution is made from the Plan or any plan substituted therefor.

■ While this section of the Can–U.S. Treaty is important for its tax deferral provisions, it does not analogize an RRSP to an IRA or an ERISA qualified retirement plan for any other purpose. Indeed, this Court finds that the Can–U.S. Treaty grants reciprocity between the respective nations for tax purposes only. The Treaty does not grant recognition of any other kind of status (e.g., leviability, alienability, or exemptability). In fact, Article II of the Can–U.S. Treaty (signed 1980, as amended 1997) purported to define the treaty's scope by reciting that "this Convention applies to taxes on income and capital." The Can–U.S. Treaty itself does not seem to be of any assistance as to the present issue, one way or the other.

Nor do the administrative pronouncements by the I.R.S. cited by the Debtor avail either side. I.R.S. Rule 96–31 merely clarifies that RRSPs are examples of plans which are qual-

ified for tax deferral status under the terms of the Can–U.S. Treaty.[7] It does not equate an RRSP with an IRA. And possibly more to the point, it was earlier announced in IRS Revenue Ruling 89–95 that "... an RRSP is not a 'qualified' plan for U.S. tax purposes."

In asking this Court to analogize his RRSP to an IRA for exemption purposes, Debtor would have this Court treat compliance with the I.R.C. as irrelevant. Compliance with the I.R.C. is often complex and difficult. And the Court of Appeals in *Dubroff* instructed that "it is not the court's task to compare and contrast the characteristics of various plans when [§ 282] explicitly endorses the tax provisions governing IRAs. [26 U.S.C. § 408]" 119 F.3d at 80. Of course, in *Dubroff,* the court was refusing to look behind the fact that the state legislature had granted an exemption for what "qualifies" as an IRA under the I.R.C. Here, this Court accepts the *Dubroff* teaching as a command that this Court not substitute itself for the legislature in determining, after making detailed comparisons, whether a foreign plan too should be exempt. In *Dubroff,* the court found that Congress and the State had treated IRAs like a pension. Here, the most that can be said of the RRSP is that Congress ratified a treaty that defers taxes on income and capital.

■ In other words, this Court must not treat an RRSP as an IRA. This Court has said on a number of occasions that a party will not be found to have successfully attained a status, as against creditors, which he or she, without compelling reason, did not even seek.[8] This Court ought not give him

---

7. Notice 96–31, entitled RRSPs and RRIFs Under 1995 Protocol to U .S.-Canada Income Tax Treaty, provides, in relevant part:

   "This notice clarifies the application of the Convention Between the United States of America and Canada with Respect to Taxes on Income and on Capital, dated September 26, 1980, as amended by the Protocols dated June 14, 1983, March 28, 1984, and March 15, 1995 ... to *dividends and interest derived by distri*butions from, and income accrued in ... RRSPs .... Thus, RRSPs ... qualify for the benefits of Article XVIII of the Convention."

8. For example, in bench rulings this Court has interpreted *Sanyo Electric, Inc. v. Howard's Ap-*

*pliance Corp. (In re Howard's Appliance Corp.),* 874 F.2d 88 (2d Cir.1989), so as to deny equitable liens or constructive trusts in instances in which the claimant knew or should have known the right way to obtain a valid, perfected lien, but did not seek one. Obtaining a valid lien on a motor vehicle or on goods can be, and often is, "bungled." To bestow a right that is tantamount to a perfected and unavoidable lien may constitute a windfall for a claimant who did not try to obtain a lien *de jure,* who may well have failed, and who well may have found any successfully-obtained lien to be avoidable or subject to subordination. Of course, the present case has nothing to do with liens, but the analogy is apt. The Debtor wants his funds treated as if they were in

the same status that he would have if he (or his employer, or his depository institution) had done whatever was necessary to assure that his retirement funds were held in a plan that qualified for exemption under N.Y. D & C § 282. Otherwise, the Court must become an expert by comparing and contrasting all of the attributes of RRSPs and IRAs, would ignore the plain text of the exemption statute, would impinge upon the statutory authority of the Internal Revenue Service, the Congress, the State of New York, et al. to make such decisions, and would demean the efforts that countless other employers, employees, and financial institutions undertake every day to assure that their devices are "similar" to pension funds (as defined in *Dubroff*).

■ The Debtor put forth several other arguments as to the RRSP. After giving consideration to all of these arguments, each in turn is rejected. First, the Debtor argues that the RRSP should be exempt because of this Court's duty to construe exemptions liberally. This is rejected because even the most liberal construction does not extend to creating an exemption out of whole cloth and against the weight of authority.[9] See *In re Howerton*, 21 B.R. 621, 623 (Bankr.N.D.Tex. 1982). Second, the Debtor cites *Matter of Carmichael* in which the Court of Appeals for the 8th Circuit allowed Debtor's exemption of a qualified IRA. See 100 F.3d 375 (5th Cir.1996). This too must fail as *Carmichael* adds nothing to the *Dubroff* analysis, and *Dubroff* applies only to IRA's, not RRSP's, as explained above. Third, the Debtor asserts that the Trustee failed to meet his burden under Rule 4003 FRBP. This is rejected because the Trustee's burden is met by pointing out that the claimed exemption does not exist. No provision of law exempts these funds or leaves them outside the bankruptcy estate. Finally, the Debtor argues that the RRSP should be exempt because the funds originated in a plan (the Equity Plan) "established," and later terminated by Air Canada. This writer finds this also to be of no consequence. It appears from his deposition testimony that moving his interests from the Equity Plan into the RRSP rather than a qualified American IRA was the Debtor's enlightened, business choice.[10]

(ii). *The 11 U.S.C. § 541(c)(2) argument is rejected.*

■ Because 11 U.S.C. § 541(c)(1) nullifies antialienation provisions to the extent that they might be viewed as a limitation on a debtor's § 541(a)(1) estate, the Debtor may look only to § 542(c)(2) or an exemption statute for salvation. But he has offered no suggestion that his RRSP is any more protected by § 541(c)(2) than an IRA would be. Assuming only for the sake of argument that Canadian law is the "applicable law" for § 541(c)(2) purposes, the Debtor has not cited any restriction on transfer relative to an RRSP. To the contrary, the Trustee has cited *Royal Bank of Canada v. North American Leasing Co.*, a Canadian high court decision, which repeatedly asserts that RRSPs are not exempt from creditor claims. See 1 S.C.R. 325 (1996).[11]

an IRA, beyond the reach of creditors, when in fact there was never an effort to comply with 26 U.S.C. § 408 even though the Debtor was a U.S. resident in 1996.

9. Historically, IRAs were not considered exempt. Consider the following lower court decisions (some of which have been superseded by statute or overruled by higher authority), but which illustrate the reluctance of some bankruptcy courts to create an exemption for money that is readily available to a debtor: *In re Damast*, 136 B.R. 11, (Bankr.D.N.H.1991); *In re Swenson*, 130 B.R. 99 (Bankr.D.Utah 1991); *In re Matthews*, 65 B.R. 24 (Bankr.N.D. Iowa 1986); *In re Kitson*, 43 B.R. 589 (Bankr.C.D.Ill.1984); *In re Fichter*, 45 B.R. 534 (Bankr.N.D.Ohio 1984); *In re Peeler*, 37 B.R. 517 (Bankr.M.D.Tenn.1984);

*In re Pauquette*, 38 B.R. 170 (Bankr.D.Vt.1984); *Hovis v. Lowe (In re Lowe)*, 25 B.R. 86 (Bankr. D.S.C.1982).

10. Indeed, the Debtor could perhaps have simply rolled his equity fund monies into an American IRA rather than into a Canadian RRSP, although he presumably would have lost money to the foreign exchange rate, if he had done so.

11. Under § 408 of the I.R.C., IRAs are indeed "trusts," and they can be found to be excluded from property of the estate because of 11 U.S.C. § 542(c)(2), but only where such a restriction is clear. See, e.g., *In re Yuhas*, 104 F.3d 612 (3rd Cir.1997) (finding that New Jersey law contains a restriction), and *In re Mecham* (11th Cir.1997) (restricted by Georgia law).

**216**

Again, the fact that the RRSP funds originated in a fund established by Air Canada is irrelevant. It is what the Debtor did with the funds when the Equity Plan was terminated that is important, and he eventually chose to put them in an RRSP rather than an American IRA or a duly recognized (under N.Y. or federal exemption law) exempt plan or contract.

### CONCLUSION

The RRSP is not exempt and the Debtor is directed to take all steps necessary to turn the funds in it over to the Trustee forthwith.

The pension is exempt except to the extent that it might exceed the reasonable needs of the Debtor or his dependents, as contemplated by N.Y. D & C § 282(2)(e). The Trustee's arguments in that regard lack specificity; moreover, it is not clear whether the Trustee will still object in that regard, now that only the pension fund has been allowed as exempt.

Counsel shall report back in that regard on **November 25, 1998 at 10:00 a.m. in Part I, 310 U.S. Courthouse, 68 Court Street, Buffalo, New York.**

SO ORDERED.