**In re Mary Jane RUNDLETT, Debtor.**

**No. 93 Civ. 0027 (GLG).**

United States District Court, S.D. New York.

April 12, 1993.

Shaw, Licitra, Parente, Esernio &
Schwartz, P.C. (J. Stanley Shaw, Roberta
L. Slattery, Jeffrey M. Zalkin, of counsel),
Garden City, NY, for appellant-cross-appel-
lee.

Zalkin, Rodin & Goodman (Andrew D. Gottfried, Jay Teitelbaum, of counsel), New York City, for appellee-cross-appellant.

## *OPINION*

GOETTEL, District Judge.

These cross appeals arise from two orders issued by the bankruptcy court on July 9 and July 16 involving the exemption of the proceeds of five insurance policies. After a careful analysis of the record, we uphold the decisions of the bankruptcy court in full.

## FACTS

The debtor-appellant, Mary Jane Rundlett is the widow of Donald H. Rundlett, the former Chairman and Chief Executive Officer of Private Capital Partners ("PCP"), an investment banking firm that filed a Chapter 11 petition in bankruptcy court on October 10, 1991. Although Rundlett did not hold a position with PCP, in the late 1980s, she and her husband co-signed certain of PCP's obligations to various banks as guarantors.

Mr. Rundlett and his partner also executed a promissory note in favor of Anne Torell, sister to the debtor, for $260,000. On January 28, 1991, Rundlett executed a "Conditional Guarantee" in favor of Torell limited to $130,000 of her husband's $260,-000 note.

At the time of his death on August 25, 1991, there were five insurance policies insuring the life of Mr. Rundlett naming the debtor as beneficiary. Mr. Rundlett purchased four of the policies from Equitable Life Assurance Society of America in 1971, 1981, 1984, and 1988. He assigned two of the policies to his wife in the late 1980s. The fifth policy was purchased and owned by PCP.

In September of 1991, Rundlett received the proceeds of the five life insurance policies which totaled approximately $3.5 million. Rundlett placed all the money in a single bank account and used roughly $1.2 million of account funds on various expenditures and purchases, including a new Florida home, a Lexis automobile, and a payment of $130,000 to her sister, Anne Torell.

On November 15, 1991, a group of banking institutions holding Rundlett's guaranties filed an involuntary Chapter 7 petition against her. The debtor elected to convert her Chapter 7 bankruptcy into a voluntary Chapter 11 case and filed a schedule of exempt property (the petitioning banks moved for an order to reconvert the case to Chapter 7 which Judge Schwartzberg granted. He issued an order converting the case back to Chapter 7 on February 21, 1992). Included in Rundlett's filed exemptions were the proceeds of the five insurance policies which the debtor claimed were exempt under New York Insurance Law § 3212(b)(2). The debtor moved for summary judgment on her claims that the life insurance proceeds were exempt.

In a decision dated June 1, 1992, the bankruptcy court held that, of the $3.5 million exemption sought, the debtor was entitled to an exemption of $603,097.60. Judge Schwartzberg found that the New York statute which exempted life insurance proceeds only applied to the creditors of a spouse-beneficiary if the spouse also held title to the policy. Since the sum of the proceeds of the two policies assigned to the debtor was $603,097.60, that amount was found exempt. *In re Rundlett*, 142 B.R. 649 (Bankr.S.D.N.Y.1992). This decision was implemented by order dated July 16, 1992.

On July 9, 1992, the bankruptcy court issued another decision which attempted to reconcile the fact that, in light of the debtor's $1.2 million expenditure of insurance proceeds, there were insufficient funds to account both for the $2,924,903.23 in non-exempt proceeds and $603,097.60 in exempt proceeds. The trustee argued that, as a consequence, the debtor was not entitled to the full $603,097.60 exemption. The bankruptcy court found that Rundlett was indeed entitled to the full exemption and implemented its decision by order issued on the same day.

On July 29, 1992, the Chapter 7 trustee commenced an adversarial proceeding to avoid and recover the $130,000 payment to

Torell, claiming that the payment was a preferential transfer voidable under 11 U.S.C. § 547(b). Judge Schwartzberg granted summary judgment to the trustee and voided the transfer. *In re Mary Jane Rundlett*, 149 B.R. 353 (Bankr.S.D.N.Y. 1993). Torell has decided not to appeal that decision.

Rundlett now appeals Judge Schwartzberg's July 16 order which declared only the proceeds of two of the five life insurance policies to be exempt. The trustee cross appeals the bankruptcy court's July 9 and July 16 orders allowing the debtor the full $603,097.60 exemption claiming that (1) the debtor lost her exemption through commingling exempt and non-exempt funds and (2) the exempt funds have already been partly spent by the debtor.

**ANALYSIS**

Pursuant to 28 U.S.C. § 158(a) we have jurisdiction over this case as an appeal of an order of a bankruptcy judge in a case referred to the bankruptcy court under § 157. The parties agree that there are no disputed issues of fact to be reviewed on the appeal and cross-appeal. As to the disputed conclusions of law, our review is de novo. *In re Chateaugay Corp.*, 104 B.R. 637 (S.D.N.Y.1989).

A. *Decision Below*

■ At the heart of this appeal and cross appeal is a New York statute which exempts the proceeds of life insurance policies in certain instances. It reads:

(1) If a policy of insurance has been or shall be effected by any person on his own life in favor of a third person beneficiary, or made payable otherwise to a third person, such third person shall be entitled to the proceeds and avails of such policy as against the creditors, personal representatives, trustees in bankruptcy and receivers in state and federal courts of the person effecting the insurance.

(2) If a policy of insurance has been or shall be effected upon the life of another person in favor of the person effecting the same or made payable otherwise to such person, the latter shall be entitled to the proceeds and avails of such policy as against the creditors, personal representatives, trustees in bankruptcy and receivers in state and federal courts of the person insured. If the person effecting such insurance shall be the spouse of the insured, he or she shall be entitled to the proceeds and avails of such policy as against his or her own creditors, trustees in bankruptcy and receivers in state and federal courts.

N.Y.Ins.Law § 3212(b). Under both parts of the statute, life insurance proceeds are exempt from the creditors of the insured. However additional protection may be provided to a spouse. Whether or not such protection is provided turns on by whom the policy was effected. If the insured "effects" a policy on his or her own life naming a spouse or other third person as beneficiary, the life insurance proceeds are only exempt from the creditors of the insured and not the creditors of the beneficiary. However if a beneficiary "effects" insurance on his or her spouse, the proceeds also will be exempt from the spouse-beneficiary's creditors. *See In re Bifulci*, 154 F.Supp. 629, 631 (S.D.N.Y.1957) (holding "where a husband takes out insurance on his own life and names his wife as a beneficiary, but does not assign the policy to her, the proceeds are exempt from the husband's creditors, but they are not exempt from the wife's creditors, even if the policy was taken out at the instigation of his wife.")

The bankruptcy court found that three of the Rundlett policies were covered by (b)(1) under which there is no provision which entitles Rundlett to the proceeds as against her creditors or the trustee. However, the proceeds of the remaining two were found exempt under (b)(2).

Judge Schwartzberg's holding was based on New York case law which treated obtaining policy ownership as equivalent to effecting the policy. In *Kaufman v. New York Life Ins. Co.*, 32 A.D.2d 79, 299 N.Y.S.2d 269 (1st Dep't 1969), *aff'd*, 26 N.Y.2d 878, 309 N.Y.S.2d 929, 258 N.E.2d 213 (1970), Sylvia Kaufman sought an exemption from the claims of a judgment

creditor for the cash surrender value of four policies insuring her husband David's life. Two of the policies at issue named Sylvia as a beneficiary but were purchased by David who later assigned ownership to her. The Appellate Division treated David's assignment of the policy to Sylvia as equivalent to her effecting the policy herself. *Id.* Judge Schwartzberg wrote that the *Kaufman* court "treated the husband's purchase of the policies as acting as an agent for his wife so that his affirmative act of acquiring title for the policies was attributed to the wife after he assigned the title to her." 142 B.R. at 653. Based on *Kaufman,* Judge Schwartzberg treated two of the policies which were purchased by Rundlett's husband and assigned to her as having been "effected" by Rundlett through her husband as agent.

### B. *Debtor's Appeal*

1. Public policy favoring a liberal interpretation

■ Rundlett first argues under New York law, courts must liberally construe exemption statutes and that had Judge Schwartzberg applied liberal rules of construction, he would have found that all five policies were exempt. *See Kaufman,* 299 N.Y.S.2d at 272 (stating that the statute "should be given a liberal construction to achieve the end of protecting dependents of the insured"). Debtor argues failure to do so frustrates the statutory purpose of providing for the family of the insured. While we agree that public policy favors a liberal construction of exemptions, such rules do not permit us to redraft the exemption statute. *In re De Vries,* 76 B.R. 917, 918 (Bankr.N.D.N.Y.1987). In this instance, the legislature has clearly distinguished between policies which were effected by a beneficiary spouse and those which were not, and it is not for us to ignore the plain language of the statute. Therefore, we reject debtor-appellant's first argument that Judge Schwartzberg's decision be reversed.

### 2. Misapplication of Case Law

■ Rundlett's second argument is that Judge Schwartzberg misapplied New York case law in the decision below. Rundlett claims language used by the *Kaufman* court implicitly recognizes that life insurance proceeds are always exempt from a beneficiary's creditors. Specifically the Appellate Division wrote "[b]ut for the assignment of such proceeds of such policies, the proceeds thereof clearly would have been exempt from attachment as to the debtor Sylvia Tuckerman since she would only have had the interest of a beneficiary." Rundlett claims that the quoted passage in addition to other passages using similar language infer that she would have been entitled to an exemption in the absence of assignment of the policies because she was a spouse-beneficiary.

The bankruptcy court considered this argument and rightly rejected it. Aside from being dicta, the statements Rundlett relies upon simply do not apply to the situation at hand. Analyzing the disputed language, Judge Schwartzberg wrote, "the term 'proceeds' [refers] to the cash surrender value to which the owner of the policy would be entitled while alive and not the funds payable to the beneficiary on death of the owner." 142 B.R. at 652. It follows that the creditors of a beneficiary who is not also the owner of an insurance policy can not attach the policy's surrender value because the beneficiary has no interest in the surrender value and only an inchoate interest in the death benefit proceeds.

The debtor cites several other cases in support of her claim that courts have interpreted insurance proceeds to be exempt from a beneficiary's creditors. However, on closer examination, the cases are all distinguishable.[1] The other cases relied on by Rundlett, *Joint Venture Acquisition v. Misra,* 87 Civ. 5340 (RWS); 1992 WL 212352 (S.D.N.Y.) and *Dellefield v. Block,* 40 F.Supp. 616, 617 (S.D.N.Y.1941), in-

---

**1.** Indeed several cases cited by the debtor do no more than acknowledge that an insurance exemption exists and do not elucidate when such an exception would apply. *See In re Iacono,* 120 B.R. 691, 693 (Bankr.E.D.N.Y.1990); *In re Lauterbach,* 74 B.R. 627, 628 (Bankr.N.D.N.Y.1987); *In re Leonardo,* 11 B.R. 453, 455 (Bankr. W.D.N.Y.1981).

volved attempts by joint judgment creditors to garnish life insurance policies bought by husbands which named their wives as beneficiaries while the husbands were still alive. The courts held that the judgment creditor could not levy against the insured debtor or the debtor beneficiary. The *Dellefield* court noted that the beneficiary spouse had a mere inchoate right to proceeds and that the insured spouse's interest was protected as "avails and proceeds" of an insured taken out on his own life for the benefit of another.

Rundlett argues that the bankruptcy court improperly distinguished *Kaufman* and *Dellefield* based on the fact that they involved cash surrender value rather than proceeds. She supports her argument by the fact that both death benefits and cash surrender and loan values are included in the statutory definition of "avails and proceeds." N.Y.Ins.Law § 3212(a)(1). She claims that since the statute does not differentiate between the two, they must be treated the same for exemption purposes.

While Rundlett's argument has some surface appeal, a close analysis reveals it to be meritless. For, under Judge Schwartzberg's analysis, both death benefits and cash surrender value are treated identically under the New York statute. Section 3212 exempts both the surrender value and proceeds from the insured's creditors and from the creditors of a spouse beneficiary if he or she has effectuated the policy. The surrender value of policy is exempted from the creditors of a spouse beneficiary who has not effected the policy, not through operation of the statute, but because such a beneficiary does not have an interest in the policy's surrender value capable of attachment. Accordingly, we reject debtor-appellant's second argument that the decision below be reversed.

### 3. Misapplication of Agency Theory

█ Finally, the debtor argues that the bankruptcy court erred by impermissibly narrowing the agency theory espoused by the Court of Appeals in *Chatham Phenix Nat. Bank and Trust Co. v. Crosney*, 251 N.Y. 189, 167 N.E. 217 (1929). In *Chatham*, the Court of Appeals was grappling with two statutes which are not at issue here, § 52 of the Domestic Relations Law and § 55 of the Insurance Law, a predecessor statute to § 3212(b). Prior to reaching its holding, the court discussed the expansive reading given to the Domestic Relations statute.

According to the *Chatham* court, § 52 was drafted in order to protect widows who could not take out an insurance policy in their own name. As a result, husbands would buy insurance policies which named their estates as beneficiaries, leaving the insurance proceeds within reach of the husband's creditors. *Chatham* at 192, 167 N.E. 217. Section 52 exempted a limited amount of insurance proceeds from the reach of the deceased husband's creditors. It read:

A married woman may, in her own name, or in the name of a third person, with his consent, as her trustee, cause the life of her husband to be insured.... Where a married woman survives ... she is entitled to receive the insurance money, payable by the terms of the policy, as her separate property, and free from any claim of a creditor or representative of her husband, except where the premium actually paid annually out of the husband's property exceeds five hundred dollars, that portion of the insurance money which is purchased by excess of premium above five hundred dollars, is primarily liable for the husband's debts.

N.Y.Dom.Rel. § 52 (1909) (amended 1957).

In order to effectuate the purpose of protecting the widow, New York courts held, that the statute also applied where the insurance was effected by the husband but is made payable to the wife. *See Whitehead v. New York Life Ins. Co.*, 102 N.Y. 143, 6 N.E. 267 (1886). The *Chatham* court explained that such holdings were justified by an agency theory in which "the husband acts as the agent of the wife only in the sense that he enables the wife to obtain the benefit of the fund." *Chatham*,

251 N.Y. at 193, 167 N.E. 217.[2]

Rundlett quotes this language from *Chatham* which explains why the legislature found a married woman to have "caused" the life of her husband to be insured when it was really the husband who procured the insurance. She argues that the agency theory discussed by the *Chatham* court did not require an affirmative act such as assignment of the policy in order to find that a husband had acted as an agent for his wife by procuring a policy for her benefit, and, in finding that such an act was required, Judge Schwartzberg improperly narrowed application of the exemption.

We first note that the agency theory employed in *Chatham* was applied to the interpretation of § 52 of the Domestic Relations law and not § 55 of the Insurance Law, the direct predecessor to the statute now at issue. Although an argument could be made that both statutes are predecessors to § 3212(b), the agency theory discussed in the *Chatham* case is inapplicable here in that it was used to carve an exemption from the claims of the creditors of the deceased husband rather than of the surviving wife. The specific situation addressed in *Chatham* has now been remedied by the current exemption statute which provides that the creditors of a deceased insured cannot attach insurance proceeds held by his or her spouse. Further, the *Chatham* court's interpretation of "effected" in § 55 is actually the opposite of the

interpretation advanced by the debtor since the court found a policy to be "effected" by an insured-husband where the wife-beneficiary "caused" him to be insured but he paid the premiums. *Id.* at 197, 167 N.E. 217. Therefore, we reject debtor-appellant's third argument that the decision below be reversed.

### 4. Policy Number 85041770

■ One of the insurance policies now at issue, policy number 85941770 was actually purchased by PCP. The bankruptcy court found that an insurance policy purchased by a corporation on the life of a shareholder could not be regarded as having been effected by the shareholder's spouse. *Levitt v. Fichtner*, 191 Misc. 610, 77 N.Y.S.2d 631 (1948). Therefore the bankruptcy court found that the policy proceeds could not be exempt under § 3212(b)(2).

The debtor now argues that Mr. Rundlett was the true beneficial owner of the policy because he took over premium payments in 1991. Rundlett maintains that she should be deemed to have effected the policy because her husband was beneficial owner of the policy and, as such, acted as her agent. Because we have already determined that a beneficiary will not be deemed to have effected a life insurance policy on his or her spouse absent the transfer of policy title to him or her, we need not concern ourselves with whether or not Mr. Rundlett was beneficial owner of the policy purchased by PCP. Therefore, we uphold the bankrupt-

**2.** After its discussion of § 52, the *Chatham* court tackled the real issue in the case, the application of § 55–a of the Insurance Law. Section 55–a was passed by the legislature, in part, to remedy the fact that § 52 set a cap on the amount of insurance proceeds a widow beneficiary could take free from the claims of her husband's creditors while "no limitation existed on the right of a stranger named as the beneficiary of a policy upon the life of another to take the entire insurance fund upon the death of the insured, free from any claims of the creditors of the insured." *Chatham* at 194, 167 N.E. 217. Section 55–a provided that a lawful beneficiary took the proceeds from all policies "effected by any person on his own life, or on another life, in favor of a person other than himself" free from the claims of the "creditors and representatives of the insured and of the person effecting the same." Because the wife-beneficiary in the

*Chatham* case had caused the life of her husband to be insured, there was a dispute as to whether the insurance proceeds were exempt under § 55. Because it was clear that § 55–a was passed to protect insurance proceeds in the hands of widows, the New York Court of Appeals found that, "[there was] no reasonable basis ... for a construction which would create distinctions between policies where the contract of insurance is made by the insurance company with the beneficiary, and policies where the contract is made with the person whose life is insured." *Id.* at 197, 167 N.E. 217. Thus, the court found that "[w]ithin the meaning of the statute, in all cases insurance is 'effected' by the person whose life is insured, upon the appropriation and investment by him of his moneys in the premiums which would create the insurance fund." *Id.* at 197, 167 N.E. 217.

cy court's finding that the proceeds of policy number 85041770 are not exempt.

## C. *Trustee's Cross–Appeal*

The trustee has cross-appealed the bankruptcy court's July 16 order and appealed the July 9 order regarding the treatment of non-exempt proceeds. The trustee does not disagree with the bankruptcy court's determination as to which policies were effected by debtor and therefore exempt. However, the trustee claims that Judge Schwartzberg erred in failing to find that the debtor's commingling of the exempt and non-exempt insurance proceeds deprives Rundlett of her exemption. In the alternative, he asserts that the bankruptcy court erred by not deeming all prepetition expenditures paid for with insurance proceeds which diminished Rundlett's estate to have been made from exempt funds.

### 1. Treatment of prepetition expenditure of proceeds

■ As a result of the $1.2 million Rundlett spent from insurance proceeds, the trustee claims that her estate was depleted by $370,000 (the remainder of the $1.2 million was spent on the Florida house which is still held by the estate). The trustee argues that the bankruptcy court erred by not deeming all pre-petition expenditures from insurance proceeds which depleted Rundlett's estate to have come out of the exempt portion of the proceeds.[3]

Before the bankruptcy court, the trustee sought that such prepetition expenditures be apportioned so that the debtor be deemed to have spent her own money first. Judge Schwartzberg rejected this argument based on the fact that the trustee had no claim on the debtor's estate prior to the filing of the petition unless the trustee could establish a voidable preferential transfer. Judge Schwartzberg wrote:

> [t]he trustee in the instant case simply stands in the shoes of the general unsecured creditor as of the commencement of the bankruptcy case pursuant to 11 U.S.C. § 323, and may claim all property of the estate as of that time.... Any funds which the debtor spent in the prepetition period and which cannot be recaptured as preferential transfers pursuant to 11 U.S.C. §§ 547 and 548, respectively, cannot be treated as property of the estate and do not belong to the trustee in bankruptcy. 11 U.S.C. § 541.

*In re Mary Jane Rundlett,* 142 B.R. 655, 657 (Bankr.S.D.N.Y.1992). Thus, Judge Schwartzberg found that the trustee could not reach back before the case commenced and claim a right to insurance proceeds received by the debtor in the prepetition period. Further, Judge Schwartzberg noted that the debtor could not be deemed to have spent exempt funds because such exempt funds are also not created until the date of the filing of the bankruptcy petition.

We agree with Judge Schwartzberg's analysis. Because the trustee did not have any claim over Rundlett's money prior to the filing of the bankruptcy petition, he could not have stopped her from spending the non-exempt proceeds, nor recovered any of the proceeds she spent prior to November 15, 1991 unless he could prove that such spending constituted a preferential transfer pursuant to §§ 547 and 548. (The trustee has already succeeded in recovering one such transfer made to Torell for the sum of 130,000.) While the trustee asserts it is inequitable to allow Rundlett to both spend the insurance proceeds and claim the full $603,097.60 deduction, we note that, had the debtor known that some of the proceeds were exempt and some not, she could have placed the money in two separate accounts spending only the non-exempt funds, thus, also preserving the full amount of her exempt funds.

### 2. Commingling

■ Before we begin our analysis of the trustee's commingling argument, we note

---

**3.** The expenditures which depleted the estate are: (1) $75,000, retainer for bankruptcy counsel, (2) $10,000, Florida Homeowners Association dues, (3) $128,000, renovations to Florida home, (4) $30,000, automobile purchase, (5) $68,575, past due bills, and (6) $58,425, unaccounted for expenditures. An additional $130,000 payment to Anne Torell was recovered as a preferential transfer.

that it was not considered in the decision below. At oral argument, the trustee asserted that he raised the issue before the bankruptcy court. However, Judge Schwartzberg's July 9, 1992 decision only discusses the issue of whether prepetition expenditures should be apportioned between exempt and non-exempt funds. 142 B.R. at 656–657. In spite of this, since the trustee's commingling argument is essentially a legal one, we will consider it here rather than remanding the case to the bankruptcy court.

The trustee cites *In re Weaver*, 93 B.R. 172, 175 (N.D.Ind.1988) and *In re McGuire*, 37 B.R. 365 (Bankr.M.D.Fla.1984) for the proposition that the commingling of exempt and non-exempt funds robs a debtor of his right to claim an exemption. However, on close examination, neither case offers strong support for his position because, in both cases, the proceeds for which the debtors sought exemption were found not to be exempt prior to the commingling.

*Weaver* involved the disposition of proceeds of a workmen's compensation settlement received one month prior to bankruptcy. The Indiana workmen's compensation statute at issue provided that claims for compensation under the statute would be exempt from all claims of creditors. *Id.* at 174; I.C. § 22–3–2–17 (1929). However, the Indiana district court found that the term "compensation" referred to the "employer's duty to pay out money" rather than money in the hands of the employee and that Indiana case law "explicitly holds that a debtor's money is *simply money* regardless of whether it is derived from exempt payments." *Weaver* at 175. Therefore the workmen compensation settlement lost its exemption once it was received by the debtor *prior to* its commingling with other funds.

*McGuire* involved the proceeds from the sale of a debtor's home. The debtor's widow claimed that the proceeds were exempt under the Florida homestead exemption. However, the bankruptcy court noted that under Florida law such an exemption only applied if "the vendor shows by a preponderance of the evidence an abiding good

faith intention prior to and at the time of sale of the homestead to reinvest the proceeds thereof within a reasonable time." *Id.* at 366 quoting *Orange Brevard Plumbing and Heating Co. v. La Croix*, 137 So.2d 201 (Fla.1962). The Florida Supreme Court went on to say that only those proceeds which are earmarked for reinvestment and segregated from the seller's other funds are entitled to exemption. *La Croix* at 206. The bankruptcy court found that the debtor's commingling of the proceeds and failure to establish any steps to arrange for the purchase of a new residence prevented his widow from claiming the homestead exemption. *McGuire* at 367.

The debtor maintains that she should not be penalized for commingling the insurance proceeds prior to the initiation of the bankruptcy proceedings because she had a good faith belief that all the insurance proceeds belonged to her. Perhaps more persuasive, however, is the fact that, for purposes of this bankruptcy proceeding, Rundlett's exemption was not created until the bankruptcy petition was filed. In bankruptcy, an exemption functions to carve out a certain amount of the debtor's assets and protect them from creditors. No exempt proceeds exist prior to the commencement of bankruptcy proceedings. *In re Bronner*, 135 B.R. 645, 647 (Bankr. 9th Cir. Cal.1992). Thus, contrary to the trustee's contentions, commingling could not have functioned to cause the proceeds of the two assigned policies to lose their status as exempt proceeds because such status had not yet been created.

Therefore, we reject the trustee-appellee's arguments that the bankruptcy court be reversed. We also reject the debtor-appellant's arguments for reversal and, accordingly, affirm both the bankruptcy court's July 9 and July 16, 1992 orders.

SO ORDERED.