**In re Ernesto MATA, Sr. and Angela Mata, Debtors.**

**Bankruptcy No. 98–11893 K.**

United States Bankruptcy Court, W.D. New York.

April 2, 1999.

Francis W. Tesseyman, Jr., West Seneca, NY, for Debtor.

Melissa A. Tocha, Aaron, Dautch, Sternberg & Lawson, Buffalo, NY, for Trustee.

MICHAEL J. KAPLAN, Bankruptcy Judge.

This case presents the issue of whether a husband and wife, as joint Chapter 7 debtors who have each "effected" two life insurance policies on their own lives and named their spouse as the beneficiary, may exempt the cash value of the policies under § 3212(b)(1) of N.Y. Insurance Law.[1]

The facts of the case are undisputed: the Debtors claim the policies as exempt, and the Chapter 7 Trustee has objected. Briefs have been submitted. The Court finds that § 3212(b)(1) applies, is clear, and does not avail the Debtors.

## DISCUSSION

This appears to be the only case in which such reciprocal policies are addressed in the context of a bankruptcy case in which both of the insureds are debtors in a Chapter 7 case.

In cases that do not involve reciprocal policies, or do not involve joint bankruptcy, there have been constructs by which some courts have viewed one spouse as having acted as "agent" for the other so as to give the beneficiary/spouse the benefit of being both the beneficiary and the "effector" or "owner" of the policy on the other's life, so as to give the beneficiary/spouse the protection of § 3212(b)(2) as against her own creditors. No court, in my view, would ever ignore the agreed facts so as to achieve a "double-deeming" of reciprocal agency, so as to prejudice the creditors of both spouses in a joint bankruptcy case. Indeed, even if two spouses were to document and prove a *de jure* reciprocal double-agency in the purchase of polices in similar amounts, one would end up asking, "Why?" Each spouse could simply have used the same purchase monies to purchase polices on each other's life, and brought themselves squarely within § 3212(b)(2).

Here the record is clear. Husband owns the policies on his own life and Wife owns the policies on her own life. No deeming of "agency" is sought. There is no conceivable interpretation of the statute or the cases that would exempt the cash surrender value of all of these policies from all of the creditors of each spouse, where the exemption can only be governed by § 3212(b)(1), rather than § 3212(b)(2).[2]

At risk of seeming overly reductionist, it is the Court's view that turning cash into insurance policies and naming the spouse as beneficiary does not insulate that cash from claims of creditors' of both the insured and the beneficiary in a joint bankruptcy case, unless the cases fall squarely

---

1. Section 3212(b)(1) provides:

   If a policy of insurance has been or shall be effected by any person on his own life in favor of a third person beneficiary, or made payable otherwise to a third person, such third person shall be entitled to the proceeds and avails of such policy as against the creditors, personal representatives, trustees in bankruptcy and receives in state and federal courts of the person effecting the insurance. (1985).

   Also pertinent is § 3212(b)(2) which provides:

   If a policy of insurance has been or shall be effected upon the life of another person in favor of the person effecting the same or made payable otherwise to such person, the latter shall be entitled to the proceeds and avails of such policy as against the creditors, personal representatives, trustees in bankruptcy and receivers in state and federal courts of the person insured. If the person effecting such insurance shall be the spouse of the insured, he or she shall be entitled to the proceeds and avails of such policy as against his or her own creditors, trustees in bankruptcy and receivers in state and federal courts. (1985).

2. In their briefs, both parties agree that subsection (b)(2) is inapplicable to the facts of this case.

into § 3212(b)(2) and no fraudulent transfers were involved.

## THE DEBTORS' ARGUMENTS

Before examining the cases cited in the briefs, it is important to recognize that the various rights attendant to a whole life policy (borrowing, cashing out, proceeds, change in beneficiary, dividends, etc.) cannot reside "nowhere." For example, if the power to cash in a policy does not reside in the owner of the policy then it must reside in the beneficiary. This Court will not approve a notion that neither the Husband nor Wife may invade the cash surrender value.

With that as a starting point, we may immediately discard the case of *In re Rundlett*, 153 B.R. 126 (S.D.N.Y.1993) as having any relevance to the present question. That court's statement that "[t]he [cash] surrender value of policy [sic] is exempted from the creditors of a debtor spouse beneficiary who has not effected the policy, not through operation of the statute, but because such a beneficiary does not have an interest in the policy's surrender value capable of attachment" was rendered in the context of the beneficiary's bankruptcy filing after the death of her husband. See 153 B.R. at 131. Clearly, after the death of the insured, the beneficiary's only right was to proceeds, which included any excess of cash surrender value over face value. And if her husband were still alive, the *Rundlett* decision would tell us nothing about the exemptability of the cash surrender value as to his creditors or as to her creditors if he ordered the cash payable to her. And it tells us nothing of the ability of his bankruptcy trustee (if *Rundlett's* husband were alive and in a bankruptcy) to exercise the power to cash out the policy, if the husband had the power to do so for his own benefit. Again, if one is going to argue that Wife has no leviable interest while Husband lives (because he may change beneficiaries, borrow against the policy, cash out, etc.), one may not also be heard

to argue that Husband too had no power to do these things other than for Wife's benefit. If she has no leviable interest, then he must be able to divest his wife of any interest in which event *his* creditors should have rights against the policy.

Similarly, the Debtors' reliance on *Dellefield v. Block*, 40 F.Supp. 616 (S.D.N.Y. 1941) is misplaced. That case held that an insured ordinarily "has, during his lifetime, certain present rights which arise out of his policy: The right to dividends, to assign, to borrow, to surrender for cash, and to change the beneficiary. The beneficiary has a mere inchoate right to the proceeds and avails upon the happening of a contingency and which right is subject to being defeated at the will of the insured." 40 F.Supp. at 617 (citing *Davis v. Modern Industrial Bank*, 279 N.Y. 405, 18 N.E.2d 639 (1939)). So the *Dellefield* Court determined that the predecessor to § 3212(b)(1) exempted a policy as against the creditors of the husband, where he had purchased the policy on his own left but for his wife's benefit (I do not have the text of the 1941 version of the Insurance Law then before the court (despite an effort to find it), and so will not comment upon this particular holding, other than to say that I would not necessarily differ with it in the bankruptcy case of the husband.)

But to determine that the wife's interest in the policy was exempt as to her own creditor, the *Dellefield* court relied on the "construct" that the husband acted as agent of the wife in taking out the policy, in order to protect the policy against her creditors under the predecessor to § 3212(b)(2). As noted above, no such "construct" is argued here, nor would this Court approve a "double-reciprocal-constructive agency" in a joint bankruptcy case.

Though affirmed by the New York Court of Appeals and therefore otherwise binding on this Court under 28 U.S.C. § 1652, the case of *Kaufman v. New York Life Ins. Co.*, 32 A.D.2d 79, 299 N.Y.S.2d 269, was like *Dellefield*, based on a con-

struct that gave the wife the benefit of what is now § 3212(b)(2), and is of no effect here in a joint bankruptcy case involving reciprocal policies. See *Kaufman*, 32 A.D.2d 79, 299 N.Y.S.2d 269 (1969).

Lastly, the Debtors cite the case of *Males v. New York Life Insurance Co.*, for the proposition that "... An insured policy with a named beneficiary is deemed to be exempt policy in a bankruptcy proceeding...." See 48 A.D.2d 50, 367 N.Y.S.2d 575 (N.Y.App.Div.1975). But that too did not involve reciprocal policies, and in any event involved only the husband's bankruptcy and the husband's debts.

### THE TRUSTEE'S ARGUMENTS AS TO ALLOCATION OF CASH VALUE

Among the Trustee's arguments, it is asserted that the cash surrender value of each policy is available to the creditors of the owner/insured, because the beneficiary's interest in the policy is to proceeds only, and in this case both debtors are alive.

It is not clear to the Court whether the respective cash surrender values are available only to the creditors of the insured/owner or only to the creditors of the beneficiary. It seems odd to include cash surrender value in the definition of "proceeds and avails" and then use that term with regard to the beneficiary, if the beneficiary has rights only to proceeds. But in any event, it is not clear that any answer is necessary, because if the proof of claims turn out a certain way,[3] or if substantive consolidation is sought and approved, it will make no difference. Furthermore, the Debtors argued only that all interests in these policies are exempt and did not brief the alternative position. Depending upon which Debtor owes what, and upon whether there are any non-dischargeable debts,

the Debtors may wish to brief the question of whether the Trustee is correct or not as to which estate owns the cash surrender value of the respective policies.

The Debtors shall cooperate with the Trustee in converting these policies into cash, and the respective ownership of the cash avails of the policies may be raised at a later time, if necessary.

SO ORDERED.

---

**3.** It may be that there is such identity of debts and assets as to filed claims that there is no meaningful difference in the amount of distribution, if cash surrender value of two policies is thought to be owned by one of the two estates as opposed to the other, and if the converse is true as to the other two policies.