**In re James E. LOWE, Debtor.**

**No. 00–110278 K.**

United States Bankruptcy Court, W.D. New York.

Aug. 29, 2000.

John H. Ring III, Buffalo, NY, for trustee.

William D'Amico, GM–UAW Legal Services, Cheektowaga, NY, for debtor.

MICHAEL J. KAPLAN, Bankruptcy Judge.

This is a Chapter 7 Trustee's Objection to the Debtor's exemption claim. Apparently presenting an issue of first impression, the parties ask whether a Chapter 7 debtor's accrued funds in a profit sharing plan created by agreement between General Motors Corporation and the United Auto Workers in November, 1996 are exempt under the "opt out" exemption statutes of the State of New York.[1]

It is important to note at the outset that nothing submitted to the Court by either side suggests whether that profit sharing plan is or ever has been ERISA-qualified. Thus, the issue presented in cases such as *General Motors v. Buha,* 623 F.2d 455 (6th Cir.1980)—whether ERISA itself provides a federal "exemption"—is not presented here.[2]

The dollar amount at issue in this case is small (only $1,172.22 gross, before withholding taxes, etc.), but the issue is substantial because General Motors is (fortunately) a major employer in this District.

It is apparently agreed that the Debtor's right to receive the calendar year 1999 cash distribution accrued on December 31, 1999, that his Chapter 7 petition was filed on January 20, 2000, and that the profit sharing distribution was paid to him or to his "direct-deposit" account on March 12, 2000.

The Debtor makes six arguments:

(1) His interest in the GM–UAW Profit Sharing Plan is expressly "exempt" under Section 282 of New York's Debtor and Creditor Law;

(2) It is expressly "excluded" from his § 541 bankruptcy estate pursuant to New York's Civil Practice Law and Rules ("CPLR") § 5205;

(3) It is excluded from the § 541 estate as a "spendthrift" trust pursuant to § 541 of the Code itself;

(4) The Debtor may exempt it under the exemption for "cash" provided for in New York Law;

(5) The "fresh start" policy outweighs the *de minimus* benefit to creditors in this case if the Trustee is successful; and

(6) The equities of the case favor the Debtor because he had no other exemptions other than a twelve year old car (no homestead, no bank account, no "tools of the trade," etc.).

---

1. No cases have been found as to this GM–UAW profit sharing plan under the exemption law of *any* state.

2. The *Buha* case was not a bankruptcy case, but held that because of ERISA's anti-alienation provisions ERISA-qualified pension benefits are not subject to garnishment by a creditor.

The Court rejects each of these arguments and sustains the Trustee's objection to the claim of exemption in the proceeds of the GM/UAW Profit Sharing Plan.

## DISCUSSION

### 1. The New York exemption schema.

Analysis of any bankruptcy exemption issue arising out of New York exemption laws must begin with an understanding of the convoluted New York exemption schema.

For non-bankruptcy purposes, exemption provisions are not collected in a single statute, nor is the phraseology consistent from provision to provision. The most straightforward provision for non-bankruptcy purposes is CPLR § 5205 which simply states that "The following personal property . . . is exempt from application to the satisfaction of a money judgment. . . ." It then enumerates such household items as stoves, the family bible, family pictures and school books, a church pew, domestic animals not exceeding $450 in value, all necessary wearing apparel and household furniture, a wedding ring, a watch not exceeding $35 in value, and tools of the debtor's trade. See N.Y.C.P.L.R. § 5205 (McKinney 1997).

CPLR § 5206 uses almost the same phraseology, it states that "Property of one of the following types, not exceeding $10,000 in value above liens and encumbrances, . . . is exempt from application to the satisfaction of a money judgment. . . ." It then recites "1. a lot of land with a dwelling thereupon, 2. shares of stock in a cooperative apartment corporation, 3. units of a condominium apartment, or 4. a mobile home." See N.Y.C.P.L.R. § 5206(a) (McKinney 1997).

In contrast, § 3212 of the Insurance Law uses different language. For example, § 3212(b)(2) states: "If a policy of insurance has been or shall be effected upon the life of another person in favor of the person effecting the same or made payable otherwise to such person, the lat-ter shall be entitled to the proceeds and avails of such policy as against the creditors, personal representatives, trustees in bankruptcy and receivers in state and federal courts of the person insured. If the person effecting such insurance shall be the spouse of the insured, he or she shall be entitled to the proceeds and avails of such property as against his or her own creditors, trustees in bankruptcy and receivers in state and federal courts." See N.Y.Ins.Law (McKinney 1985).

Clearly, that provision not only provides a non-bankruptcy exemption, but also an exemption that would apply in bankruptcy under 11 U.S.C. § 522(b)(2)(A), whether or not the State of New York had "opted out" of the federal exemption list.

Overarching the above is the fact that New York did indeed "opt-out." Its opt-out legislation is found in yet another title of New York's Consolidated Laws. Section 284 of the Debtor and Creditor Law prohibits the use of the federal exemption list, which the state is permitted by 11 U.S.C. § 522(b)(1) to so prohibit. Section 283 of the Debtor and Creditor Law permits, among other things, a "wild card" cash exemption, with certain limitations, and with a cap of $2500.

The core of the bankruptcy exemption schema for the State of New York is Debtor and Creditor Law § 282. In addition to setting forth some specific exemptions for bankruptcy purposes (such as a motor vehicle exemption, an exemption for certain streams of income (as fully discussed herein), and payments related to crimes or accidents of which debtor was the victim). Debtor and Creditor Law § 282 contains the following critical language. As to bankruptcies concerning a natural personal domiciled in New York, such a debtor "may exempt from the property of the estate . . . *only* (i) personal and real property exempt from application to the satisfaction of money judgments under [§§ 5205 and 5206 of the Civil Practice Law and Rules, and] (ii) insurance policies

and annuity contracts and the proceeds and avails thereof as provided in [§ 3212 of the Insurance Law].... [Emphasis added.] The word "only" is important because it avoids the need to study the numerous other state statutes that deal with, or seem to deal with, exemptions.[3]

Cumbersome as it is, this exemption schema does not work badly with regard to the relationship between § 282 of the Debtor and Creditor Law and §§ 5205 and 5206 of the CPLR. Section 282 of the Debtor and Creditor Law refers to "personal and real property exempt from application to the satisfaction of money judgments under" §§ 5205 and 5206. Those CPLR sections themselves use the same language; to wit, "The following personal property ... is exempt from application to the satisfaction of a money judgment" (§ 5205) and "Property of one of the following types ... is exempt from application to the satisfaction of a money judgment ..." (§ 5206).

There is a major "disconnect," however, between Debtor and Creditor Law § 282 and Insurance Law § 3212. In this regard, § 282 of the Debtor and Creditor Law states "an individual debtor ... may exempt from property of the estate ... insurance policies and annuity contracts and the proceeds and avails thereof *as provided in* § 3212 of the Insurance Law." [Emphasis added.] But, as noted above, § 3212 of the Insurance Law, unlike CPLR §§ 5205 and 5206 does not use the word "exempt" or "exemption" in its key, operative provisions. Rather, it uses phrases such as "such person shall be entitled to the proceeds and avails as against ... creditors, personal representatives, trustees in bankruptcy and receivers," or "nor shall creditors be allowed to interfere with or terminate the contract...." The Court will leave the proper interpretation of this "disconnect" to another day, but offers the suggestion that the most logical

reading of the part of § 282 of the Debtor and Creditor Law that states that an insurance policy and the proceeds and avails thereof are exempt "as provided in" § 3212 of the Insurance Law, is that one should look only at the particular provisions of § 3212 of the Insurance Law that deal expressly with bankruptcy.

Finally, for today's purposes, we need to address one further complication, this one arising not from the state law exemption schema alone, but from an interplay of § 541(c)(2) of the Bankruptcy Code and state law. 11 U.S.C. § 541(c) broadly nullifies any provision of any agreement, instrument, or even non-bankruptcy statute, that would operate to keep property out of a § 541 estate by restricting or conditioning the alienability of the interest by the debtor. But there is an exception. Section 541(c)(2) states: "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title." The legislative history unequivocally states that this exception preserves the spendthrift nature of spendthrift trusts.

█ New York law presumes that a trust set up by one person to provide income to another is a spendthrift trust.[4] So where the interest of a debtor in a trust settled by someone else is only an income interest, that interest is not part of the debtor's § 541 estate and it may not be seized by the bankruptcy trustee. This is clearly true as to payments not yet due to be paid to the debtor. How it would apply to payments in the hands of the debtor that are directly traceable to the exempt, income interest, is not clear. (Perhaps it becomes merely "cash" in hand, protectable only to the extent of the $2500 exemption available to those who do not claim a homestead exemption.)

---

**3.** E.g., § 48–a of the Personal Property Law, § 23 of the Volunteer Ambulance Workers' Benefit Law, and § 34 of the Canal Law.

**4.** N.Y. Est. Powers & Trusts Law § 7–1.5 (McKinney 1992).

A trust that has been settled by the debtor himself or by agreement between the debtor and, for example, an employer, is not entitled to any presumption that it is a "spendthrift" trust. It is an inability to invade the corpus that is at the heart of a trust that is a "spendthrift trust." Therefore, when the four corners of a trust, or of a contractual trust agreement, permit invasion of the corpus by the debtor, a debtor wishing to exempt the interest pursuant to § 541(c)(2) must point to a statute that "deems" the trust to be a "spendthrift trust" despite the power of invasion.

CPLR § 5205(c) answers this call. (See footnote 11.) It expressly states a general rule that property "while held in trust" for a judgment debtor is exempt where the trust was created by, or the fund had "proceeded from," a person other than the judgment debtor. It then enumerates, with specificity, a long list of common retirement and pension planning devices, such as 401(k)s, IRAs and KEOGHS and declares that those "shall be considered a trust which has been created by or which has proceeded from a person other than the judgment debtor, even though such judgment debtor" was the settler or depositor (or was a self-employed individual or was a partner of the entity sponsoring the KEOGH, or was a shareholder of the corporation sponsoring retirement or other plan).

And for good measure, that provision states that all of the trusts, custodial accounts, annuities, insurance contracts, monies, assets, or interests that are enumerated in the provision "shall be conclusively presumed to be spendthrift trusts ... for all purposes, including, but not limited to, all cases arising under or related to a case arising under" the Bankruptcy Code.

It is important to emphasize that the state statute requires ERISA qualification if something that is not of itself a spendthrift trust in fact, is to be "conclusively deemed" to be a spendthrift trust, and therefore exempt. Most importantly, the trust exemption applies only "while held in trust." Nothing in § 5205(c) exempts a judgment debtor's power to invade the corpus, if the settlor gave her that power. (This is more fully discussed herein; see text accompanying footnotes 13–15.)

Although 11 U.S.C. § 541(c)(2) seems to provide a federal "exemption" for spendthrift trusts, it expressly preserves only "a restriction on the transfer of a beneficial interest of the debtor in a trust *that is enforceable under non-bankruptcy law.*" Thus, in attempting to exempt a trust as spendthrift trust, one may not simply point to 11 U.S.C. § 541(c)(2). Rather, one must point to something in state or federal common law or statute that makes the contractual (or other) limitation on the transfer of a beneficial interest "enforceable" against one's creditors.

### 2. "Liberal interpretation"

Having thus sketched the exemption schema for bankruptcy cases in this state, there is one other threshold matter, raised by the Debtor, to be addressed before we consider the Debtor's specific arguments.

The Debtor reminds the Court that "Exemption statutes are to be liberally interpreted in favor of debtors. *In re Miller,* 167 B.R. 782 (Bankr.S.D.N.Y. 1994)." (Debtor's Responsive Memorandum of Law, page 1.) This maxim, which is codified at § 324 of the N.Y. Statutes Law, must be placed in proper perspective.

It is the view of this Court that this maxim is not an end unto itself and does not displace all other rules of statutory construction with regard to exemption statutes. As has been said,

"the liberal construction given exemption laws does not permit courts to construe an exemption statute in a manner contrary to policy underlying the exemption, ... [C]ourts may not part substantially from the express language of an exemption statute, by including within the exemption that which the legislature

did not intend, in order to enlarge its scope. If some subject has not been covered by the act or if a particular object has not been declared exempt, it is not for the court to supply that which is lacking.

"This means that courts cannot ignore the plain meaning of a statute, or say that the legislature intended a larger exemption grant than is given by the plain wording of the statute. If the language of the statute is clear in its context, it is controlling, and no judicial construction is needed. The province of the court is exhausted when it has made an application of the exemption law to the given case, answerable to the real meaning and intent of the law."[5]

■ Additionally, exemption statutes are "open to construction *only where* the language used therein requires interpretation or may be reasonably considered ambiguous.... [W]here no ambiguity appears, ... the clear and explicit terms of the statute express the legislative intention. A plain and unambiguous statute is to be applied, and not interpreted, since such a statute speaks for itself, and any attempt to make it clearer is a vain labor and tends only to obscurity."[6] (Emphasis added).

■ "[I]t is not permissible to create an obscurity in a statute to be cleared up by construction. Rules of interpretation are resorted to for the purpose of resolving an ambiguity, not for the purpose of creating it."[7] Yet that is precisely what the Debtor wishes the Court to do with this maxim. The Debtor wishes to take, from a statutory scheme that is admittedly complex, but not necessarily ambiguous, pieces of legislation which seem on their face to benefit the Debtor when taken out of context, and then "liberally construe" them to provide an exemption

for the Debtor. That is not the purpose of the maxim. Rather, the purpose of the maxim is to be sure that "no mere technicality should defeat the right of exemption, and whenever the claim to an exemption can be brought within the purpose and intent of the statute by a fair and reasonable interpretation, the exemption should be allowed.... [The] statutory language should not be restricted in its meaning and effect so as to minimize its operation on the benificient (beneficent) [sic] objects of the statutes. Furthermore, when there is a doubt as to a statute's intent, it should be construed in favor of the debtor, especially in the absence of a clear legislative statement not to favor a debtor...."[8]

■ The critical language in the above quotation, which the Debtor omits in his recitation of the maxim, are these words: "whenever the claim to an exemption can be brought within the purpose and intent of the statute" by a fair and reasonable interpretation, the exemption should be allowed. This thorough recitation of the maxim makes it clear that the Court must ascertain the purpose and intent of the statute by applying normal rules of statutory interpretation, to determine whether the statutory scheme is or is not ambiguous, and whether or not what the Debtor is requesting would fall within or without the purpose and intent of the exemption statute.

Aids to statutory interpretation that usually are resorted to in instances of statutory ambiguity are appropriate to consider, in this writer's view, when dealing with complex statutory schemas, where such consideration helps in determining the purpose and intent of the legislation as a whole, and in determining whether something remains "ambiguous" and therefore subject to "liberal interpretation in favor

---

5. 31 Am.Jur.2d, *Exemptions* § 18 [case authorities omitted] (1989).

6. 73 Am.Jur.2d, *Statutes* § 194. [case authorities omitted] (1974).

7. 73 Am.Jur.2d, *Statutes* § 195. [case authorities omitted] (1974).

8. 31 Am.Jur.2d, *Exemption* § 17. [case authorities omitted] (1989).

of the Debtor." Despite the maxim, it is appropriate to apply principals such as *"para materia," "noscitur a sociis," "ejusdem generis,"* and *"expressio unius est exclusio alterius."* [9] And then, if the Court finds a term like "household goods" or "cash equivalents" to be vague or ambiguous in its full context, it will be construed liberally in favor of a debtor, rather than restrictively or technically against a debtor.

3. The Debtor's interest in the Pension Fund is not exempt under N.Y. Debtor & Creditor Law § 282.

■ Now, the Debtor's arguments. Firstly, the Debtor insists that this fund is exempt under New York Debtor and Creditor Law § 282, subdivision 2 which provides, in pertinent part, that an individual debtor may exempt: "The debtor's right to receive or the debtor's interest in: ... (e) all payments under a stock bonus, pension, profit sharing, or similar plan or contract on account of illness, disability, death, age, or length of service ..." He argues that under this provision, a profit sharing plan is always exempt. In his Memorandum of Law, he asserts that "the qualifiers 'on account of illness, disability, death, age or length of service' apply only to the 'similar plans or contracts' referenced in the statute, not to the specified funds preceding the word 'or.'" He asserts that "This is a plain reading and a reasonable reading of the statute. Exemption statutes are to be liberally interpreted in favor of debtors."

The Court agrees that the statute is not a model of clarity, but "on account of" appears to the Court to modify "payments," not anything enumerated in the prepositional phrase beginning with "under a" and ending with "plan or contract." "On account of" connotes computation, and it is "payments" that are computed and paid, not "plans" or "contracts." The most logical and reasonable construction of this statute is to paraphrase it thusly: "all payments on account of illness, disability,

death, age or length of service, under a stock bonus, pension, profit sharing, or similar plan or contract." It was not enacted that way, but that is the clearest and most reasonable construction of the plain, but jumbled, words.

Even apart from the "plain language," the Debtor misconstrues the statutory schema. The Debtor's reasoning would exempt a profit sharing plan regardless of amount and regardless of whether or not the funds therein are available to the Debtor like "cash in the bank" without tax penalty or age limitation. In fact, the exemptibility of cash, "cash equivalents" and other forms of "money in the bank" is not the subject of § 282(2). Rather, it is § 283(2) of the Debtor and Creditor Law that permits a debtor, under some circumstances, to "exempt cash in the amount by which $5,000 exceeds the aggregate of his [other personal property exemptions] or in the amount of $2,500, whichever amount is less." And that statute states "for purposes of this subdivision, cash means currency of the United States at face value, savings bonds of the United States at face value, the right to receive a refund of federal, state and local income taxes, and deposit accounts in any state or federally chartered depository institution." N.Y. Debtor & Creditor Law § 283(2) (1990). Since, as a matter of statutory construction, the specific must prevail over the more general, it is incorrect to jump to a conclusion that § 282 also provided an unlimited cash exemption for all monies sitting in a profit sharing account, or sitting in an employer's coffers awaiting profit-sharing accrual and payment.

Rather, the language upon which the Debtor relies is contained in a broader provision in a different section of the Debtor & Creditor Law which recites: "Bankruptcy exemption for right to receive benefits. The debtor's right to receive or the debtor's interest in: (a) a social security benefit, unemployment compensation or a

9. Codified as N.Y. Statutes §§ 221–223, 239, 240 (McKinney 1971).

local public assistance benefit; (b) a veterans' benefit; (c) a disability, illness, or unemployment benefit; (d) alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor; and (e) *all payments under a stock bonus, pension, profit sharing or similar plan or contract on account of illness, disability, death, age, or length of service* [except for certain self-settling, non-ERISA qualified plans]." N.Y. Debtor & Creditor Law § 282(2) (1990 and 1999–2000 supp.) (emphasis added).

When the underlined words are read in the context of their own placement among other words in the section, and read *in pari materia* with the more specific statute dealing with cash and deposit accounts, it can be seen that aside from veterans' benefits, this provision deals only with the right to receive payments necessary for the Debtor's support (e.g. social security or unemployment) and substitutes for future earnings (e.g., pension, disability). It does not exempt mere additional or "bonus" compensation for labors performed in the immediately preceding year. So even if the Court were not convinced that the "plain language" of the statute belies the Debtor's interpretation, the Court would hold that the modifier "on account of illness, disability, death, age, or length of service" is a limitation on the phrase "all payments under a stock bonus, pension, profit sharing, or similar plan or contract." For both reasons, the main focus of the Debtor's first argument is rejected.

 The Debtor offers an alternate theory as to this first argument—that his profit sharing plan is in fact based on length of service because "employees must work the requisite number of hours during the calendar year in order to participate in the profit sharing plan." This Court finds

that the phrase "length of service" as used in the statute just examined must also be read in context. Again, the full clause is "all payments under a stock bonus, pension, profit sharing, or similar plan or contract on account of illness, disability, death, age, or length of service ...". Before the days of such "portable" retirement planning devices as "401 k's" and "SEP's," pension plans, etc. required years of service before they became "vested." In this context, "length of service" cannot mean simply that the Debtor worked a sufficient number of hours in one particular year. "Length of service" is a clear, plain, ordinary term connoting tenure. Full time versus part time, or work schedule during a given year, are not among its normal connotations in plain workplace terms. The statute means plans or contracts by which benefits are conferred in relation to the number of years that the Debtor has been employed. As to the profit sharing plan at bar, job tenure is completely irrelevant. All employees who work the same number of hours receive the same share of profits, regardless of whether they have worked one year or thirty years for GM. The Debtor's alternate theory as to the first argument is, thus, rejected.[10]

4. The Court rejects the other proposed arguments for the Debtor's claimed exemption.

 For his second argument, the Debtor posits that the funds should be excluded from the bankruptcy estate pursuant to CPLR § 5205(c), as was found in the case of *In re Kleist*, 114 B.R. 366 (Bankr.N.D.N.Y.1990). The clear and simple answer to this argument is that in the *Kleist* case the fund in question was ERISA-qualified, and was exempted under CPLR § 5205(c). That is what CPLR § 5205(c)(2), and (3) require if the trust is self-settling.[11] There is no hint or sugges-

---

10. Many profit-sharing plans have come before this Court that are clearly exempt. Most often they are profit sharing distributions that are payable only to the employee's pension

fund or that are otherwise held in an ERISA qualified trust until retirement, disability, etc.

11. In pertinent part, the statute reads:

tion that the profit sharing fund at issue in this case is ERISA-qualified. Moreover, there does not appear to be a trust here at all, but rather this Plan simply provides additional, deferred compensation paid by the employer. Therefore, CPLR § 5205(c) is irrelevant.

■ Thirdly, the Debtor argues that the funds are subject to the spendthrift trust provision of 11 U.S.C. § 541(c)(2). Lacking the assistance of CPLR § 5205, this argument is based on the fact that Section 6.04 of the profit sharing plan states that

"no right or interest of any Participant under this Plan shall be assignable or transferable, in whole or in part, either directly or by operation of law or otherwise, including, without limitation, by execution, levy, garnishment, attachment, pledge, or in any other manner, but excluding devolution by death or mental incompetency; no attempted assignment

or transfer thereof shall be effective; and no right or interest of any Participant under this Plan shall be liable for, or subject to, any obligation or liability of such Participant."

In this Court's view, this language, contained under the heading "ADMINISTRATION,"[12] has no application here, for several reasons. First and foremost, there is no trust here, at all (as noted above). Secondly, even if the funds are viewed as being held in trust by GM, the Debtor fails to note that all this quoted language follows the following phrase in the Plan: "Except as provided in Article 4, Section 4.05, *to the extent allowed by applicable law,*" [emphasis in original]. He also omits the fact that § 4.03(d) of the Plan states: "*notwithstanding Section 6.04 of the Plan, in the event the Corporation is legally obligated to pay a tax levy, child support, or similar legal obligations to*

§ 5205. Personal property exempt from application to the satisfaction of money judgments.

(a) Exemption for personal property. The following personal property when owned by any person is exempt from application to the satisfaction of a money judgment except where the judgment is for the purchase price of the exempt property or was recovered by a domestic, laboring person or mechanic for work performed by that person in such capacity:

. . .

(c) Trust exemption. (1) Except as provided in paragraphs four and five of this subdivision, all property while held in trust for a judgment debtor, where the trust has been created by, or the fund so held in trust has proceeded from, a person other than the judgment debtor, is exempt from application to the satisfaction of a money judgment.

(2) For purposes of this subdivision, all trusts, custodial accounts, annuities, insurance contracts, monies, assets or interests established as part of, and all payments from, either any trust or plan, which is qualified as an individual retirement account under section four hundred eight or section four hundred eight A of the United States Internal Revenue Code of 1986, as amended, or a Keogh (HR–10), retirement or other plan established by a corporation, which is qualified under section 401 of the United States Internal Revenue Code of 1986, as amended, or

created as a result of rollovers from such plans pursuant to sections 402(a)(5), 403(a)(4), 408(d)(3) or 408A of the Internal Revenue Code of 1986, amended, shall be considered a trust which has been created by or which has proceeded from a person other than the judgment debtor, even though such judgment debtor is (i) in the case of an individual retirement account plan, an individual who is the settlor of and depositor to such account plan, or (ii) a self-employed individual, or (iii) a partner of the entity sponsoring the Keogh (HR–10) plan, or (iv) a shareholder of the corporation sponsoring the retirement or other plan.

(3) All trusts, custodial accounts, annuities, insurance contracts, monies, assets, or interests described in paragraph two of this subdivision shall be conclusively presumed to be spendthrift trusts under this section and the common law of the state of New York for all purposes, including, but not limited to, all cases arising under or related to a case arising under sections one hundred one to thirteen hundred thirty of title eleven of the United States Bankruptcy Code, as amended.

12. It is clear to this writer that the purpose of § 6.04 is to enable GM to disburse the funds by means of its payroll system, and not to have to disburse to third parties. It is there for GM's administrative convenience, not the employee's protection.

*any third party, no election may be made by the Participant to defer a [Profit Sharing Amount ...]. To the extent necessary and/or available, the legally required payment will be deducted from the Participant's Profit Sharing Amount and paid to the applicable third party."* [Emphasis in original.]

In other words, though the anti-alienability language seems broad and sweeping, it is explicitly limited "to the extent allowed by applicable law." And the Plan expressly acknowledges that the rights under the plan may be legally obligated for payment by GM to third persons.

 More broadly speaking, exemption claims based solely upon anti-alienation provisions in mere contracts [13] that are not themselves trusts, or that are not part of an overall, ERISA-qualified pension "package," have no force of law as against creditors or trustees. It is only when self-settling trusts receive ERISA qualification, or fit within a specific exemption, that such contractual anti-alienation protections have force of law against a bankruptcy trustee under the spendthrift trust exclusion from the § 541 estate. If this profit sharing plan is a trust at all, this is nothing but a self-settling trust created by agreement between the employer and the Debtor's union representatives, the corpus of which is fully and readily available to the Debtor at any time, once GM declares it payable. In seeking turnover, the Trustee is simply seeking what the Debtor could seek, and not what a Debtor's creditors could seek outside the bankruptcy process.

The Trustee correctly focuses on this distinction, but the Debtor's papers seem confused in this regard. It is imperative to distinguish between a trustee's § 541 powers and a trustee's § 544 powers. Under the latter, a trustee exercises powers that a hypothetical creditor could exercise under state or federal non-bankruptcy law, if there were no bankruptcy case; the trustee does so for the benefit of all creditors and not merely the one who could have exercised the power. *Moore v. Bay,* 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931). State statutory limitations on what a creditor may do *ipso facto* limit what the trustee may do under § 544. Under § 541, however, the trustee exercises the powers that the debtor himself or herself possesses.

The very essence of the notion of "exemption" in bankruptcy is to deny the trustee the power to deal with property that the debtor could deal with.

Returning momentarily to the examination of the New York exemption schema set forth at the beginning of this decision, we see that exemption statutes achieve this purpose by using phrases like "notwithstanding § 541 of this title, an individual debtor may exempt from property of the [bankruptcy] estate ... any property that is exempt under ... state or local law ..." (11 U.S.C. § 522(b)), and "an individual domiciled in this state may exempt from the property of the estate ... personal and real property exempt from application to the satisfaction of money judgments under ..." (N.Y. Debtor and Creditor Law § 282).

So exemption statutes accomplish their purpose despite a trustee's powers under § 541 either by keeping exempt property out of the § 541 estate, or by expressly listing "bankruptcy trustees" among the entities who may not deal with certain property. Here, the Debtor wishes to keep the profit sharing funds out of the § 541 estate by claiming that the contract that his union representatives entered with GM placed these funds beyond the reach of creditors and the Trustee. That cannot be done by contract alone. Exemption must be created by statute, or by a contract that is given force of law by a statute such as ERISA, or by state statutes preserving spendthrift trusts. Unless a stat-

---

**13.** For example, if you and I agree that I will sell you my car for $5000, payable 30 days after transfer of ownership, any contract agreement that "my creditors may not reach my right to the $5000" is a waste of ink and paper. It has no legal force against a creditor or against my bankruptcy trustee if I file bankruptcy before the $5000 is paid.

ute takes the property outside the § 541 property of the estate, a Trustee is free to do with it what the Debtor himself could do with it, and the Trustee does not need the Debtor's permission or cooperation to achieve that.[14] The Debtor's argument under § 541(c)(2) is rejected.[15]

Fourthly, the Debtor claims the funds exempt under the "cash" exemption. Section 283(2) is quoted above. It recognizes the difference between "cash" and the right to receive cash that is not "in hand." And although accrued but unpaid tax refunds are enumerated there, accrued but unpaid profit sharing distributions are not. (There was no "cash" when the petition was filed, nor is a profit sharing distribution among the § 541(a)(5) "after-acquired" assets as to which Bankruptcy Rule 1007(h) permits a further exemption claim, nor is this a "lookback" matter such as a recoverable preference that might result in cash that could be exempted under 11 U.S.C. § 522(g) or (h).) *Expressio unius est exclusio alterius*, and so this Court may not create an exemption for the Debtor for some other form of accrued but unpaid "receivable." The fourth argument is rejected.

The fifth argument seeks an exemption because the amount at issue should be viewed as too small to warrant the attention of the Trustee or creditors. But a balancing of "who needs it more" is not an element of any type of exemption in this State. If the requirements of Rule 9011 are met, the Court must rule on whatever matter is before it. As noted at the outset, GM is a major employer here, and a Trustee's decision to seek a ruling on a recurring issue in "this" case rather than "that" case as to an issue that comes up repeatedly month-to-month, is completely beyond the Court's power to second guess. (It is the Executive Branch that directs Chapter 7 Panel Trustees as to what assets are or are not worth pursuing, not the Judicial Branch.)

Lastly, the Debtor argues that equity favors this honest and worthy Debtor. Of that I have no doubt. But exemptions are statutory and may not be created by the Court.[16]

A historical note is offered. Over the course of nearly 30 years that this writer, as lawyer or judge, has been deeply immersed in the study and development of bankruptcy law in this State, the law of exemptions has moved dramatically away from a nearly-monolithic view that any job-related, post-petition benefit that is "rooted in the debtor's pre-bankruptcy past" is simply "additional pre-bankruptcy compensation" and thus is not exempt. The shift from this view was driven by four factors, in this writer's opinion. One is the long-diminishing adequacy of Social Security as a worker's "safety net" for old age. The second is the consequent vast proliferation of pension planning devices available as elements of compensation, or as retirement planning for the self-employed. Third is the ability of creditors (and bankruptcy courts) to trust to the I.R.S. and the Labor Department to tell us what is authentic and what is hollow

---

14. See, for example, this Court's decision in the case of *In re Mata*, 244 B.R. 580 (Bankr. W.D.N.Y.1999), wherein the joint debtors, husband and wife, had reciprocal life insurance policies that were set up exactly opposite to the structure that would have made them exempt under § 3212(b)(2) of the Insurance Law, which provision specifically addresses "trustees in bankruptcy." Because the debtors themselves could invade the cash surrender value of the policies, and because the ownership structure they used took them outside the exemption, then the trustee could, under § 541, invade that cash surrender value. Other provisions of § 3212 of the Insurance Law that deal with limitations on the rights of creditors generally, but which do not mention trustees in bankruptcy, do not rise to the level of bankruptcy "exemptions," in this writer's view.

15. The 1978 Bankruptcy Code specifically abolished "leviability" by creditors as the test of what comes into a bankruptcy estate. Compare 11 U.S.C. § 541 with § 70 of the 1898 Bankruptcy Act.

16. See *In re Ehrich*, 110 B.R. 424, 429 (Bankr.D.Minn.1990); *In re Meyer*, 105 B.R. 920, 925 (Bankr.D.Minn.1989).

among these devices. Lastly is the willingness of state legislatures to keep pace with the changes by constant updating of the various exemption laws.

This all makes the exemptibility of postpetition benefits that are "rooted in the pre-bankruptcy past" a matter peculiarly dependent on statute, and peculiarly susceptible to the pitfalls and gaps that often accompany complex statutory schemes dealing with complex and ever-changing compensation benefits and devices.[17]

The Trustee's objection is sustained. Either the Debtor shall turn over the net profit sharing funds to the Trustee, or the Trustee may have an Order directing GM or other custodian to do so.

SO ORDERED.

---

17. E.g., *In re Ondrey*, 227 B.R. 211 (Bankr. W.D.N.Y.1998), (holding that a Canadian Registered Retirement Savings Plan (R.R.S.P.) that was "just like" an American I.R.A. was non-exempt because the exemption statute exempts I.R.A.s, not plans "just like" I.R.A.s.)